*In re* ESTATE OF HAROLD GRABOW, Deceased.—(BETTY GALVIN, Objector-Appellant, *v.* HERITAGE FIRST NATIONAL BANK OF LOCKPORT, Respondent-Appellee.)

Third District   Nos. 78-237, 78-237A cons.

Opinion filed July 27, 1979.

Betty Galvin, of Geneva, for appellant, *pro se.*

Richard T. Buck, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister and Hutchison, of Joliet, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

These consolidated appeals arise from the orders of the probate court approving, over the objections of Betty Galvin, a residuary legatee of the estate of Harold Grabow, deceased, the second accounting and the third final accounting of the executor of the estate, the Heritage First National Bank of Lockport, formerly the First National Bank of Lockport. Since the facts in this case are somewhat involved, some 4½ years having elapsed from the opening of the estate to the approval of the third and final accounting, those facts relevant to each issue will be set forth as the issue is discussed.

Ms. Galvin, in a pro-se brief and argument, raises two issues concerning the approval of the second accounting: (1) whether a residuary legatee of an estate has a right to be advised of the identities of the beneficiaries of a land trust into which the new owners have placed real estate purchased from a decedent's estate and (2) whether a legatee of an estate has a right to demand that a jury hear evidence concerning objections of the executor's accounting. Simply put, the legatee has a right to neither.

■■ ■ While article I, section 13 of the Illinois Constitution of 1970 provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate," this provision does not confer a right to a jury in any class of cases where either it had not previously existed or the proceeding was created by statute and was unknown to the common law. (*In re Estate of Haines* (1977), 51 Ill. App. 3d 163, 366 N.E.2d 548.) Probate is a purely statutory proceeding and, unless the statutes provide a right to jury in a

probate proceeding, as is done in section 16—3 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 16—3) for a limited purpose of discovery, and recovery of property of the estate, there exists no right to a jury in probate proceedings. In addition, the seventh amendment to the Constitution of the United States does not apply to State courts. *Wartman v. County Court* (7th Cir. 1975), 510 F.2d 130.

■■ ■ As for the lack of designation of trust beneficiaries on the accounting, as opposed to the identity of the trust, a residuary legatee also has no grounds for objection. At the time of the sale of these properties by the estate, the court was advised to whom the sale would be made. The 160-acre parcel was sold to the Village of Romeoville. The 80-acre parcel was sold to Earl Meisinger. Meisinger testified in open court as to the identity of persons he was likely to collaborate with in the purchase of the property. The mere fact that a purchaser of estate real estate chose to place the property in a trust is, generally, irrelevant to the probate of an estate in the absence of evidence of fraud. The legatee in the instant appeal has claimed in her brief that Meisinger is a Heritage Bank director, and in her brief in an earlier appeal (*In re Estate of Grabow* (3d Dist. 1977), 52 Ill. App. 3d 722, 367 N.E.2d 1345), she specifically alleged that Meisinger was a director of the Heritage Bank of Bolingbrook. These two assertions are not supported by anything appearing in the record, nor is there anything which would indicate that this possibility of conflict of interest of the executor was raised before the probate court, not even in the cross-examination of Meisinger by the appellant's then attorney. A court of review cannot go outside the record on appeal. While we are cognizant of the seriousness of the charges that the executor bank breached its fiduciary duty, we are unable to provide an opportunity for redress because of the limitations upon our appellate jurisdiction. Since this issue was not raised in the trial court, it was not error to allow the accountings of the executor to designate trusts, rather than individuals, as the entities to which legal title of the real estate was transferred.

The issues raised in the beneficiary's appeal from the approval of the executor's third and final accounting are more numerous. One of the issues raised has already been addressed by this opinion, specifically, whether the probate court should have reviewed the propriety of the sales of the real estate. Appellant's contention is, again, that the trust should have been investigated. In addition, she argues that the attorney for the executor, by testifying as a witness to prove up the will, created some type of conflict of interest. The Probate Act of 1975 specifically allows an attorney to attest the execution of a will in addition to acting as an attorney for the executor (Ill. Rev. Stat. 1977, ch. 110½, par. 4—6(b)). This was also the law at the time this will was admitted to probate. (*In re Estate of Gabriel* (1965), 59 Ill. App. 2d 388, 210 N.E.2d 597.) Therefore,

the action of the attorney in attesting the will does not, in and of itself, create an appearance of impropriety in the sale of estate real property by the executor.

The crux of this entire appeal appears to be that the beneficiary believes that she was denied access to estate records. This has been an ongoing objection of the beneficiary. However, a review of the record indicates that she has never specified exactly what documents she wants to review. The executor, before the probate court, expressed a desire to exhibit documents to the beneficiary if the documents were specified by her. Furthermore, the entire court file was a matter of public record and was available for her inspection. In framing this issue, the beneficiary suggests that "interested parties have a right to court review of all estate matters." In her list of authority for this issue, although no authority was relied upon in her argument, she cites the provisions of the present and former probate act relating to the procedure a fiduciary must follow to sell or mortgage real estate. Ill. Rev. Stat. 1977, ch. 110½, par. 20—5; Ill. Rev. Stat. 1973, ch. 3, pars. 227-233.

Again, Ms. Galvin seems to be seeking a review of the real estate transactions. Not only has this matter been fully considered in this opinion, but in an earlier opinion this court determined that the question of whether the executor had the power to sell the real estate without court approval, pursuant to a provision in the will, was moot because a reversal or reversal and remandment would be of no benefit, the executor having sold the property under the authority of the will. (*In re Estate of Grabow* (1977), 52 Ill. App. 3d 722, 267 N.E.2d 1345.) This reasoning is no less persuasive now, and the result must be the same.

Another contention of the appellant-beneficiary is that the probate court had no jurisdiction to approve the final accounting because there were two appeals pending on matters pertinent to the estate. The final account was approved on June 16, 1978. The mandate in the earlier appeal to which we have already referred was issued on January 11, 1978. However, other appeals were filed by the present appellant. (In re Estate of Grabow, docket nos. 78-67 and 78-97). Both of these appeals were dismissed on May 2, 1978. The mandates issued on June 8, 1978, the appellant not yet having filed an affidavit of intent to seek review in the Illinois Supreme Court. Both were recalled June 21, 1978, after petitions for leave to appeal to the supreme court were filed on June 16, 1979. Both petitions were denied on September 28, 1978, and the mandates were reissued from this court on October 26, 1978. At the June 16, 1978, hearing, Ms. Galvin orally informed the probate court that a petition for leave to appeal was presented to the Illinois Supreme Court.

■■ It seems clear that the first issuance of the mandate properly revested jurisdiction in the probate court. (*Busser v. Noble* (1961), 32 Ill. App. 2d

181, 177 N.E.2d 251.) The mandate is to issue from the reviewing court not earlier than 21 days after the entry of the judgment (Ill. Rev. Stat. 1977, ch. 110A, par 368(a)), unless an affidavit of intent to seek review in the supreme court has been filed (Ill. Rev. Stat. 1977, ch. 110A, par. 368(b)). Of course, the losing party has 56 days following the entry of the judgment to file a petition for leave to appeal in the supreme court. (Ill. Rev. Stat. 1977, ch. 110A, par. 315(b).) In the event a petition is filed, the mandate may upon just terms be recalled until the petition is ruled on or a final disposition is had. (Ill. Rev. Stat. 1977, ch. 110A, par. 368(c).) Only if the petition is filed before the mandate issues does the filing of the petition by itself affect the jurisdiction of the lower courts. Ill. Rev. Stat. 1977, ch. 110A, pars. 315, 368(b)).

■■ From a fair reading of these rules, it is apparent that once the mandate is filed in the circuit court, that court is revested with jurisdiction until a higher court, or judge thereof, issues a stay or recalls the mandate regardless of the fact that a petition for leave to appeal has subsequently been filed in the supreme court. Had the supreme court intended otherwise, it would have so provided.

In the case at bar, the appellant failed to give any indication to the appellate court that she intended to appeal further, either by affidavit or by petition for rehearing. Moreover, while the petition for leave to appeal was filed in the supreme court on June 16, we cannot ascertain whether this filing occurred before, or after, the issuance of the order of the probate court approving the third and final accounting, since Ms. Galvin did not present to the probate court a copy of her petition for leave to appeal certified by the clerk of the supreme court as having been filed. Had this been done, the probate court, in an appropriate exercise of discretion, could have temporarily stayed the proceedings. As the record stands, the probate court was property revested with jurisdiction, and Ms. Galvin cannot now be heard to complain because she failed to take the necessary action to obtain a stay or recall of the mandate.

An even less meritorious contention by Ms. Galvin is that the probate court erred by failing to be consistent in designating the appropriate times for the beneficiaries to make objections in order that those objections not be excluded. At the hearing on the first accounting by the executor, the probate court informed the legal representative of the Bible Baptist Church of Romeoville, another beneficiary, that the appropriate time for objecting to the prorating of the inheritance tax was at the time of final distribution, the executor having only indicated the total amount of the inheritance tax without showing the proportionate share of each beneficiary on the first accounting. However, when Ms. Galvin made her objections at the hearing on the second accounting, the probate court

continued the proceedings to enable Ms. Galvin to submit her specific objections in writing.

While the distinction in the nature of the objections may have escaped a pro-se participant, the record clearly indicates that all of Ms. Galvin's objections were heard by the probate court. Her objections were not excluded but instead were overruled because the trial court determined they had no merit. This conclusion is supported by the record since Ms. Galvin, while being given every opportunity to do so by the probate court, failed to produce any evidence to support the allegations contained in her objections. Ms. Galvin having been provided a sufficient opportunity to present and support her objections to the second and third accounting, her procedural rights cannot be said to have been violated.

Lastly, it is argued that the fees to be paid to the executor and the attorney for the executor are excessive. The probate court has approved executor's fees of $60,000 and attorney's fees of $80,000 for the firm representing the executor, while receipts to the estate totaled $2,127,324.57.

■■ The determination of what is reasonable compensation for the services of an executor and the attorney representing the executor is solely within the discretion of the probate court, and each determination must be based on the circumstances of each case, considering especially the size of the estate, the work done, the skill with which it was performed, the time required, the advantages gained or sought by the services rendered, good faith, diligence and reasonable prudence. (*In re Estate of Weber* (1978), 59 Ill. App. 3d 274, 375 N.E.2d 569; *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 374 N.E.2d 699; *In re Estate of Parlier* (1976), 40 Ill. App. 3d 840, 354 N.E.2d 32.) Other factors to be considered in determining the reasonableness of compensation to the executor are whether the sale of real estate was involved and how efficiently the estate was administered. (*In re Estate of Parlier* (1976), 40 Ill. App. 3d 840, 354 N.E.2d 32.) Before a reviewing court can alter the fees approved by the probate court, the determination of the probate court must be found to be manifestly erroneous. *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 374 N.E.2d 699.

On February 8, 1974, the First National Bank of Lockport, now the Heritage First National Bank of Lockport, was appointed administrator to collect. The estate, which upon the admission of the will was converted to a testate estate, remains open, even now, since the probate court has ordered that the executor not be discharged pending the determination of attorney's fees for an attorney who initially represented Ms. Galvin. Ms. Galvin has presently pending in this court a petition for leave to appeal the probate court's determination of those attorney's fees also.

In the past 5½ years, approximately, the executor and its attorneys have had to respond to a number of appeals by Ms. Galvin, the instant consolidated appeals being her fourth and fifth, in addition to administering the estate. Furthermore, the will was attacked by 32 heirs and by Susan Johnson. Ms. Johnson alleged a claim on the estate for services rendered to the deceased in return for a promise of a share in the estate. Following extensive discovery and pretrial maneuvering by the executor and its attorneys, the will contest was settled for $90,000, and the will contest by the 32 heirs was dismissed on August 12, 1975. The deposition of Susan Johnson was also taken, and her claim was dismissed on the motion of the executor.

Of course, the executor and its attorneys prepared the necessary inventories and applications for Attorney General inheritance tax consents. There was initially some difficulty in obtaining the consents to release three bank accounts, the passbooks of which were in the possession of Grabow at the time of his death but which bore the legend "Harold Grabow in trust for Betty Galvin." The attorneys for the executor overcame these objections and obtained the necessary releases so that this $46,000 could pass outside of probate to Ms. Galvin.

Since the bulk of the estate consisted of two parcels of real estate, one of 80 acres and another of 160 acres, negotiations for the sale of this property were undertaken by the executor and its attorneys. Both parcels were sold at prices in excess of the appraised values. However, the sale of the larger parcel had to be renegotiated because the time limits demanded by the original prospective purchaser could not be met due to objections, petitions and motions filed by Ms. Galvin. Subsequently, this 160-acre parcel was sold to the Village of Romeoville, for $1,248,000 after the sales agreement was modified to conform to the requirements of the bonding house.

As is the usual duty of a corporate executor, the financial records of the estate and assets were maintained by the executor, which also managed the investment of those assets. All necessary tax returns were also prepared by the executor, with the advice of its attorneys, who also reviewed the returns. An audit of the Federal estate tax return was conducted and successfully concluded.

■■ Considering the size of this estate, its administration obviously involved a substantial amount of work during the 5½ years this estate has been pending. More importantly, the services which were rendered appear to have been skillfully and diligently performed, with many advantages being obtained as for example, the settlement of the will contest, the dismissal of the Johnson claim, the release of the trust property to Ms. Galvin and the sale of the real estate for a price in excess of the appraised value. As a result, we cannot find that the probate court

abused its discretion by approving the fees of the executor and its attorneys.

Accordingly, the orders of the Circuit Court of Will County approving the second and the third and final accounting of the executor of the estate of Harold Grabow are affirmed. However, insofar as the third and final accounting provides for a disbursement for fees to James Reidy, as attorney for Betty Galvin, our ruling on the Circuit Court's determination of the propriety of these fees must be reserved pending the consideration in this court of Ms. Galvin's petition for leave to appeal.

Affirmed.

ALLOY and SCOTT, JJ., concur.