THE HABITAT COMPANY, Plaintiff and Counterdefendant-Appellee, v. MICHAEL McCLURE, Defendant and Counterplaintiff-Appellant (Edwin F. Mandel Legal Aid Clinic, Inc., Respondent-Appellant).

First District (6th Division)   Nos. 1—96—4145, 1—97—0295, 1—97—1972 cons.

Opinion filed November 20, 1998.

John A. Knight, Rebecca Glenberg, law student, and Margaret Simpson, law student, all of Edwin F. Mandel Legal Aid Clinic, Inc., of Chicago, for appellant Michael McClure.

Robert E. Lehrer and Diane L. Redleaf, both of Lehrer & Redleaf, of Chicago, for appellant Edwin F. Mandel Legal Aid Clinic, Inc.

Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellee The Habitat Company.

Sharon K. Legenza, of Chicago Lawyers Committee for Civil Rights Under Law, Inc., Zeva Schub, of Lawyers' Committee for Better Housing, Inc., and Sidley & Austin (Thomas K. Cauley and Erin E. Kelly, of counsel), all of Chicago, for *amici curiae*.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, The Habitat Company, filed this action against defendant, Michael McClure, for possession of McClure's apartment following expiration of his lease. McClure filed counterclaims against Habitat under the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1996)) (the Act) and the federal Fair Housing Amendments Act of 1988 (42 U.S.C. § 3601 *et seq.* (1994)) (FHAA) for Habitat's alleged discrimination in refusing to renew his lease due to his mental handicap. McClure subsequently vacated the premises and the case proceeded to a bench trial on his counterclaims. The trial court granted Habitat's motion for a finding at the close of McClure's case and entered judgment in favor of Habitat. See 735 ILCS 5/2—1110 (West 1996). Habitat thereafter filed a timely petition for attorney fees and expenses pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137), section 10—102 of the Act (775 ILCS 5/10—102(a) (West 1996)) and section 813 of the FHAA (42 U.S.C. § 3813(a) (1976)). The trial court granted Habitat's petition for attorney fees and expenses and entered judgment against McClure and his attorneys, appellant, the Edwin F. Mandel Legal Aid Clinic, Inc. (Mandel), for $27,329.70.

On appeal we are asked to address the following issues: (1) whether the notices of appeal filed by McClure in appeal numbers 1—96—4145 and 1—97—0295 are sufficient to confer jurisdiction on this court; (2) whether the trial court's denial of McClure's jury demand was properly raised in either of these notices of appeal and, if so, whether either the provisions of the Act or FHAA required the circuit court to conduct a jury trial; (3) if a jury trial was not improperly denied, whether the trial court, during a bench trial, improperly granted Habitat's motion for a verdict following the close of McClure's case; and (4) whether certain evidentiary rulings were erroneous and require reversal. The appeal in case number 1—97—1972 concerns the issue of whether the court erred in awarding attorney fees in favor of Habitat and against McClure and Mandel.

The record shows that, on November 30, 1988, McClure, as lessee,

entered into a lease with Habitat, as lessor, for an apartment located at 1130 North Dearborn in Chicago, in a building commonly known as Elm Street Plaza. The lease was for a one-year period commencing January 1, 1989, and ending December 31, 1989. McClure and Habitat entered into subsequent one-year leases for 1990 and 1991. McClure's mother, Audrey McClure, signed as guarantor.

Following the expiration of McClure's lease on December 31, 1991, but before any renewal of the lease was executed, McClure's rent check for January 1992 was returned to Habitat for insufficient funds. On February 7, 1992, Habitat served McClure with notice of termination of tenancy for failure to pay rent, and on or about February 14, 1992, Habitat filed a forcible entry and detainer action for possession. Mandel appeared on behalf of McClure in that action, raising claims that, in filing the suit, Habitat had discriminated against McClure based upon a mental handicap and that Habitat had failed to reasonably accommodate McClure's handicap by renewing his tenancy. McClure's attorney at Mandel, Lisa Parsons, entered into settlement discussions with Habitat's attorney, Sanford Kahn, which culminated in an agreed order of settlement whereby Habitat agreed to dismiss the 1992 case, accept past-due rent, and enter into another lease for the seven-month period commencing May 1, 1992, and ending December 31, 1992. Under the settlement agreement, Mrs. McClure was again named as guarantor.

During the seven-month tenancy, Habitat received complaints about McClure from other residents and from its staff. Robert Stumfoll, the building engineer at Elm Street Plaza, testified that McClure had an unusual number of problems with water in his apartment including several bathtub and toilet overflows. On one such occasion water was flowing out of the ceiling four floors below McClure's apartment, in the building's compactor room, requiring extraction of over 50 gallons of water. In November 1992, Kevin Flood, the building manager, notified McClure that his lease would not be renewed upon its expiration on December 31, 1992. McClure's mother contacted Mr. Flood concerning the renewal and asked him to again extend the lease. Mr. Flood agreed to renew the lease for a three-month period from January 1, 1993, to March 31, 1993, but indicated that McClure would have to leave after the end of this term.

In early January 1993, Michelle Simmons replaced Mr. Flood as the building manager at Elm Street Plaza. In that month, McClure's bathtub again overflowed, prompting Ms. Simmons to write McClure a letter regarding the incident. Also, on March 8, 1993, McClure locked a woman in his apartment and then left the building. The woman, later identified as Roseanne Borisich, became "hysterical," called the

police and unsuccessfully attempted to break the lock on the apartment door. Ms. Simmons called a locksmith, who was able to gain access into McClure's apartment so that Ms. Borisich could escape.

Subsequently, on March 25, 1993, Ms. Parsons contacted Ms. Simmons, advising her that McClure wished to again renew his lease for at least six months to September 30, 1993. Ms. Simmons advised Ms. Parsons that Mr. Flood had previously decided not to renew McClure's lease and that she agreed with that decision. Ms. Simmons testified that she could have renewed McClure's lease but determined not to do so because of McClure's prior conduct, including his tub overflows and his locking Ms. Borisich in his apartment. The next day, Habitat's general counsel, James Watts, contacted Ms. Parsons. Ms. Parsons asked Mr. Watts if Habitat would again renew McClure's lease. Watts told Parsons it was Habitat's decision not to renew the lease because of complaints from other tenants regarding McClure, the several bathtub overflows, and the lock-in incident. Ms. Parsons told Mr. Watts that those incidents seemed attributable to McClure's disability and that an accommodation might include additional services to McClure. According to Parsons, Watts told her that Elm Street Plaza was a "first class luxury high-rise property" and that it was not equipped to provide services to people with disabilities.

McClure refused to vacate the premises after March 31, 1993, and on June 18, 1993, Habitat filed an action for possession of the premises based upon expiration of his lease. On August 6, 1993, McClure filed his counterclaim and jury demand for unlawful discrimination in five counts: first, under the Chicago Residential Landlord and Tenant Ordinance (Chicago Municipal Code § 5—12—010 *et seq.* (amended November 6, 1991)); second and third, under the Act; fourth, under the FHAA; and fifth, under the federal Rehabilitation Act of 1973 (29 U.S.C. § 794 (1982)). Habitat's motion to dismiss each of the counts was granted with the exception of McClure's third count. In December 1993, McClure vacated the premises.

On September 14, 1995, McClure filed his first amended answer, affirmative defenses and counterclaims. McClure's two amended counterclaims sought damages against Habitat for intentional discrimination against McClure in not renewing his lease and for refusing to accommodate his handicap to afford him an equal opportunity to use and enjoy his apartment. McClure's first counterclaim (styled "Third Counterclaim") was again brought pursuant to the Act; the second counterclaim (styled "Fourth Counterclaim") was brought under the FHAA. Both McClure's initial counterclaim and his amended counterclaim were filed on his behalf by Mandel.

On November 16, 1995, the trial court granted Habitat's motion to strike McClure's jury demand.

On October 17, 1996, the case proceeded to a bench trial. On October 24, 1996, after McClure had rested his case following three days of trial testimony, the court sustained Habitat's motion for a finding and entered judgment in favor of Habitat and against McClure upon both of his counterclaims. See 735 ILCS 5/2—1110 (West 1996). On November 22, 1997, McClure filed his notice of appeal (No. 1—96—4145) from this judgment. That same day, Habitat filed its petition for attorney fees under Supreme Court Rule 137, the Act and FHAA. McClure subsequently sought a Rule 304(a) finding of appealability from the court which the court made on January 9, 1997. McClure filed a subsequent notice of appeal (No. 1—97—0295) the next day, on January 10, 1997.

On February 24, 1997, the trial court granted Habitat's petition for attorney fees and expenses, and on April 28, 1997, the trial court entered judgment against McClure and Mandel for Habitat's fees and expenses in the sum of $27,329.70. Mandel filed a notice of appeal (No. 1—97—1972) from this judgment on May 16, 1997. McClure joined in this appeal on May 19, 1997.

Initially, we address Habitat's claim that we have no jurisdiction to consider the appeals in Nos. 1—96—4145 and 1—97—0295 because McClure's notices of appeal were premature.

■ In *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 467-68, 563 N.E.2d 459 (1990), our supreme court determined that the filing of a petition for attorney fees in the trial court within 30 days of an otherwise final judgment renders any prior order made by the circuit court in the case nonfinal. Citing *Marsh*, Habitat argues that there is no jurisdiction in appeal No. 1—96—4145 because its petition for fees rendered McClure's prior notice of appeal premature. We agree. Jurisdiction in No. 1—96—4145 was premised upon the existence of a final order; however, the filing of Habitat's timely petition for fees rendered the court's October 24, 1996, judgment nonfinal. This is a straightforward application of our supreme court's decision in *Marsh*.

With regard to appeal No. 1—97—0295, Habitat argues that the court's order of January 9, 1997, which stated that it was "modifying" the October 24, 1996, order so as to make appealability findings pursuant to Supreme Court Rule 304(a), is essentially a "nunc-pro-tunc order," substantively changing the effect of the prior order so as to confer appellate jurisdiction where it did not previously exist. Habitat argues that it is improper for the circuit court to use its *nunc pro tunc* authority to do more than correct a typographical error or other minor defect. See *Kooyenga v. Hertz Equipment Rentals, Inc.*, 79 Ill. App. 3d 1051, 1056, 399 N.E.2d 216 (1979) (jurisdictional defects may not be

cured by entry of a *nunc pro tunc* order). Habitat also argues that when the circuit court makes a Rule 304(a) finding in a judgment order that is otherwise final, as the court's October 24, 1996, order was at the moment it was entered, Rule 304(a) language is meaningless and cannot be given effect.

■ Habitat's arguments concerning the timing of McClure's notices of appeals are patent red herrings. First, Supreme Court Rule 304(a) expressly states that the circuit court may enter Rule 304(a) findings at a time subsequent to the time of the entry of a nonfinal order. "Such a finding may be made at the time of the entry of the judgment *or thereafter* on the court's own motion or on motion of any party." (Emphasis added.) 134 Ill. 2d R. 304(a). Thus, a party may seek to modify an otherwise final order to include a finding under Rule 304(a) after a motion for attorney fees has been filed, so that the party may appeal the order without awaiting the outcome of the attorney fee petition. See, *e.g., F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994). This was clearly the basis of the trial court's January 9, 1997, order. The circuit court's common law authority to enter *nunc pro tunc* orders, which the circuit court did *not* invoke, is simply irrelevant to any of the issues presented in this appeal.

With regard to Habitat's second argument, that since it would have been improper for the circuit court to have made Rule 304(a) findings at the time final judgment was entered on October 24, 1996, the court logically should not be able to do it later, we note that our supreme court has recently reversed those appellate court rulings relied upon by Habitat. In *Niccum v. Botti, Marinaccio, Desalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 694 N.E.2d 562 (1998), the court determined that it is permissible for the circuit court to include within an otherwise final order Rule 304(a) language "in anticipation" that a party may subsequently seek attorney fees and thereby render the order nonfinal. *Niccum*, 182 Ill. 2d at 9. The inclusion of such language now operates to convert an existing appeal taken pursuant to Supreme Court Rule 301 (an appeal from a final order) into an interlocutory appeal made pursuant to Supreme Court Rule 304(a) upon the filing in the circuit court a timely postjudgment petition for fees.

In light of the above, we conclude that jurisdiction is improper in appeal No. 1—96—4145, but proper in No. 1—97—0295 pursuant to Supreme Court Rule 304(a). Jurisdiction in McClure's appeal challenging attorney fees, in No. 1—97—1972, is not challenged by Habitat and is conceded to be proper pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

After having determined that McClure's notices of appeal in Nos.

1—97—0295 and 1—97—1972 are sufficient to confer jurisdiction on this court, we turn to McClure's claim that the trial court improperly denied his jury demand.

McClure takes the position that the right to a jury trial is guaranteed by the provisions of the Act and the FHAA and that the trial court erred in denying this right in its order of November 16, 1995. Once again, however, Habitat raises a preemptory jurisdictional challenge. Habitat asserts that McClure was required by Supreme Court Rule 303(b)(2) (155 Ill. 2d R. 303(b)(2)) to specifically raise such an issue in his notice of appeal but did not do so, thereby precluding our review of the issue. McClure's notice of appeal in No. 1—97—0295 states simply that it was brought to challenge the order "entered on October 24, 1996 granting a directed finding."

■ It is settled law that a notice of appeal confers jurisdiction on an appellate court to consider only the judgments or parts thereof specified in the notice of appeal. *Mimica v. Area Interstate Trucking, Inc.*, 250 Ill. App. 3d 423, 425, 620 N.E.2d 1328 (1993). McClure did not state in his notice that he was challenging the trial court's decision to strike his jury demand. Nonetheless, notices of appeal are liberally construed and an appeal from a subsequent final judgment draws into question all prior nonfinal rulings and final but nonappealable orders that produced the judgment. *First National Bank v. St. Charles National Bank*, 152 Ill. App. 3d 923, 930, 504 N.E.2d 1257 (1987). "A notice of appeal need not designate a particular order to confer jurisdiction, as long as the order which is specified directly relates back to the judgment or order from which review is sought." *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 659, 656 N.E.2d 134 (1995). An unspecified judgment is "reviewable if it is a 'step in the procedural progression leading to the judgment specified in the notice of appeal.'" *Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d at 659, quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435, 394 N.E.2d 380 (1979).

■ The question we must resolve at this juncture is whether the denial of a jury demand constitutes a "step in the procedural progression leading to the judgment." The issue is not one of first impression. This court specifically addressed the issue in *First National Bank*. In that case, the court concluded that the circuit court's denial of several requests for a jury trial "were drawn into question" by the appellant's general notice of appeal, which did not refer to the denial of a jury. *First National Bank*, 152 Ill. App. 3d at 930. Habitat urges that we reject this holding, noting that it is not a first district opinion. Still, as McClure points out, the decision has been followed by the first district in *In re Marriage of Goldberg*, 282 Ill. App. 3d 997, 668 N.E.2d 1104

(1996), and *In re Marriage of Pleasant*, 256 Ill. App. 3d 742, 755, 628 N.E.2d 633 (1993). In light of this precedent, we determine McClure's notice of appeal is sufficient to preserve the issue and address the substantive question of whether McClure was entitled to have his claims resolved by a jury.

■ In *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 73-74, 643 N.E.2d 734 (1994), our supreme court determined that, under Illinois law, the right to a jury trial does not automatically attach to every action at law; instead, the right exists only in those actions where such a right existed under the English common law at the time the 1870 Constitution was adopted. The court emphasized that section 13 of article I of our constitution provides: "The right of trial by jury *as heretofore enjoyed* shall remain inviolate." (Emphasis added.) Ill. Const. 1970, art. I, § 13. It held, therefore, that the constitutional guarantee of a jury trial does not apply to special or statutory proceedings which were unknown to common law. *City of Monmouth v. Pollution Control Board*, 57 Ill. 2d 482, 313 N.E.2d 161 (1974) (no right to trial by jury to a claim under the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*)); *Martin*, 163 Ill. 2d at 73-74 (no right to jury trial in action brought under Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*)); *In re Estate of Grabow*, 74 Ill. App. 3d 336, 392 N.E.2d 980 (1979) (no right to jury trial in State probate proceedings); *In re Weinstein*, 68 Ill. App. 3d 883, 386 N.E.2d 593 (1979) (no right to jury trial in proceeding to terminate parental rights under Illinois Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*)).

In *Richard/Allen/Winter, Ltd. v. Waldorf*, 156 Ill. App. 3d 717, 509 N.E.2d 1078 (1987), the plaintiff filed small claim complaints seeking damages pursuant to a service contract and defendants filed a counterclaim on the ground that plaintiff violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act). After plaintiff dismissed its complaints, a jury awarded damages to defendants on their counterclaim. On appeal, plaintiff contended that defendants were not entitled to a jury trial on their counterclaims under the Consumer Fraud Act on the basis that the Consumer Fraud Act does not specifically provide for a jury trial. The appellate court reversed the trial court and held that since the Consumer Fraud Act created a cause of action unknown at common law and the language of the Consumer Fraud Act does not specifically provide for a jury trial, the trial court erred in granting the jury request. In so holding, the court made clear that the Illinois Constitution does not require that a jury trial be had in every case and that

the appropriate focus when no direct statutory mandate exists is whether an action constitutes a special or statutory proceeding unknown to the common law as it existed in 1870. *Richard/Allen/Winter*, 156 Ill. App. 3d at 722.

Handicap discrimination was not actionable under the Act until 1989, when, *inter alia*, it was made a civil rights violation for a landlord to discriminate against a tenant based upon a handicap. 775 ILCS 5/3—102.1 (West 1996). Clearly then, an action under the Act is a departure from the common law. *Lipsey v. Human Rights Comm'n*, 267 Ill. App. 3d 980, 985, 642 N.E.2d 746 (1994). Since McClure's claim for handicap discrimination was nonexistent at common law, and because the General Assembly did not include the right to a jury in the text of the Act, it follows that McClure is not entitled to a jury trial thereon under our constitution. *Cf. Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 281 Ill. App. 3d 1066, 1078-79, 667 N.E.2d 664 (1996).

■ In its brief, *amici curiae*, Chicago Lawyers' Committee for Civil Rights Under Law, Inc. (Lawyers' Committee), argues vigorously that we should find that our General Assembly meant to include the right to a jury trial in enacting the Act, principally because federal courts have allowed jury trials in cases brought under the FHAA (*Curtis v. Loether*, 415 U.S. 189, 39 L. Ed. 2d 260, 94 S. Ct. 1005 (1974); *Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) (jury used to decide fair housing discrimination claims); *Knapp v. Eagle Property Management Corp.*, 54 F.3d 1272 (7th Cir. 1995) (same); *Littlefield v. McGuffey*, 954 F.2d 1337 (7th Cir. 1992) (same)). Lawyers' Committee reasons that because the General Assembly, in amending the Act, intended to implement in the Act rights and remedies that were substantially equivalent to those that existed in the FHAA, it follows that the General Assembly meant to accord claimants under the Act the same rights as the federal courts have determined are appropriate under the FHAA. We disagree.

The Act was designed to provide uniform procedures and remedies for discrimination claims brought under Illinois law. *Dilley v. Americana Healthcare Corp.*, 129 Ill. App. 3d 537, 546, 472 N.E.2d 596 (1984). In this regard, section 8—111(c) of the Act provides as follows:

> "Limitation. Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8—111(c) (West 1996).

The Act was therefore intended to provide the exclusive and comprehensive scheme of remedies and administrative procedures to redress human rights violations. *Mein v. Masonite Corp.*, 109 Ill. 2d 1, 7, 485

N.E.2d 312 (1985); see also *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 516, 639 N.E.2d 1273 (1994) (claim for sexual harassment is a civil rights violation within the meaning of the Illinois Human Rights Act and governed thereby); *Dilley*, 129 Ill. App. 3d at 546-47 (claim for sexual discrimination must be brought under the Illinois Human Rights Act); *Yount v. Hesston Corp.*, 124 Ill. App. 3d 943, 464 N.E.2d 1214 (1984) (Human Rights Act was the exclusive remedy for violation of section 12, article I, of the constitution relating to handicap discrimination).

In *Faulkner-King v. Wicks*, 226 Ill. App. 3d 962, 590 N.E.2d 511 (1992), the plaintiff filed suit for sex discrimination resulting from her denial of a promotion and tenure while a professor at the University of Illinois, alleging causes of action under the Illinois Constitution, the United States Constitution and federal law. The circuit court granted the defendants' motion to dismiss for want of subject matter jurisdiction, finding that the Act provided the exclusive remedy for plaintiff's discrimination claims. On appeal, plaintiff argued that circuit courts have concurrent jurisdiction over a claim premised on federal civil rights statutes. The Court rejected plaintiff's argument and affirmed the circuit court's dismissal of plaintiff's federal statutory civil rights claims on the basis that Illinois courts lack subject matter jurisdiction over such claims, stating:

"The United States Congress cannot require circuit courts to hear certain disputes. Congress can utilize State courts to enforce Federal rights, but it must do so subject to all conditions which the State court imposes on other litigants. [Citation.] Although circuit courts are courts of general jurisdiction, the legislature, by authority of the State Constitution, has restricted that jurisdiction when the claim involves a controversy covered by the Act. Courts have consistently ruled the Act is the exclusive source of a remedy for an employment-discrimination claim. Circuit courts cannot be compelled to accept such cases under the guise of Federal authority." *Faulkner-King v. Wicks*, 226 Ill. App. 3d at 970-71.

While McClure's claims involve handicap discrimination in the rental of housing, the holding of *Faulkner-King* logically applies to McClure's claims as well since the Act expressly states that any such unlawful discrimination is included in the Act. 775 ILCS 5/1—103(I) (West 1996) (defining "handicap"); 775 ILCS 5/1—103(Q) (West 1996) (defining "unlawful discrimination" as including discrimination against a person because of his or her handicap); 775 ILCS 5/3—102.1 (West 1996) (defining as a civil rights violation discrimination in the sale or rental of real estate on the basis of handicap).

The fact that McClure is permitted to proceed directly in the

circuit court rather than to first proceed administratively before the Department of Human Rights does not change this result. His right to proceed judicially in the first instance for an alleged civil rights violation is narrowly permitted by article 10 of the Act, which expressly allows such civil rights violations to be filed judicially only in connection with civil rights violations arising out of real estate transactions under article 3 of the Act. In fact, section 10—101 of the Act provides as follows:

> "10—101. Applicability. This Article shall apply solely to civil actions arising under Article 3 of this Act." 775 ILCS 5/10—101 (West 1996).

Thus, the Act clearly allows claims of unlawful discrimination to be commenced in the Illinois circuit courts only if those civil actions arise under the Act, and specifically article 3 thereof. There is no basis to conclude that the Illinois courts can somehow be used to advance any federal discrimination claims under the FHAA independent of an Act claim.

In any event, we reject the claim by McClure and *amici* that, in passing the FHAA, Congress meant to require Illinois courts to afford a housing discrimination claimant the right to a jury trial. Nothing in the specific provisions of the FHAA requires a jury trial. Thus, even if we were to assume that Illinois courts possessed subject matter jurisdiction over an FHAA claim, the issues of whether the claim is to be tried by a jury and, if so, how the jury is to be composed, whether it is to be a jury of 12 or less, whether the decision is to be made by unanimity or majority, are all matters rightfully within the control of the state courts. *Brown v. Gerdes*, 321 U.S. 178, 190, 88 L. Ed. 659, 666, 64 S. Ct. 487, 493 (1944) (Frankfurter, J., concurring, joined by Jackson, J.). For example, in *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 60 L. Ed. 961, 36 S. Ct. 595 (1916), the Supreme Court held that the seventh amendment to the United States Constitution does not require state courts hearing FELA claims to provide jury trials in those suits, and upheld the state's system of non-unanimous jury verdicts in such suits. Thus, while Congress may avail itself of state courts for the enforcement of federal rights, Congress generally takes the state courts as it finds them, subject to all the conditions for litigation in the state courts that the state has decreed for every other litigant who seeks access to its courts. *Brown*, 321 U.S. at 190, 88 L. Ed. at 666-67, 64 S. Ct. at 493.

■ Having determined that the trial court did not improperly strike McClure's jury demand, we turn, at long last, to the substantive issues presented. In handicap discrimination cases, Illinois trial courts employ a three-part procedure set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). Thus, when presenting evidence in the circuit court in a landlord/tenant dispute such as here, the petitioner must first establish "by a preponderance of the evidence a *prima facie* case of unlawful discrimination." *Peck*, 234 Ill. App. 3d at 336. If, and only if, this is done, then a rebuttable presumption arises that the landlord has unlawfully discriminated. The landlord must then articulate, but not necessarily prove, that a legitimate, nondiscriminatory reason exists for its decision. *Peck*, 234 Ill. App. 3d at 337. If this is done, the presumption of discrimination created by the *prima facie* case is rebutted. *Peck*, 234 Ill. App. 3d at 337. The petitioner must then prove by a preponderance of the evidence that the landlord's articulated reason was not the true reason, but was instead a pretext for unlawful discrimination. *Peck*, 234 Ill. App. 3d at 337.

▉ Initially, we note that the use of the words *"prima facie* case" in the discrimination context has brought some confusion to the issue of what is required to shift the burden away from the person claiming discrimination and onto his opponent to put forth a nonpretextual reason for his conduct. As explained in *Lanter Courier v. Industrial Comm'n*, 282 Ill. App. 3d 1, 668 N.E.2d 28 (1996), it is *not* sufficient for a claimant to simply offer evidence that could, theoretically, support a finding of discrimination if all the evidence were believed and all contrary evidence were ignored. *Lanter Courier*, 282 Ill. App. 3d at 6. Rather, the claimant must prove "by a preponderance of evidence" that discrimination occurred. *Courier*, 282 Ill. App. 3d at 6. Whether this burden is met is therefore a question of fact for the fact finder to determine. In other words, the expression *"prima facie"* in the discrimination context merely means "initially," so that the claimant must prove his case to the fact finder's satisfaction before the burden shifts. See *Courier*, 282 Ill. App. 3d at 6-7.

The presumption that arises from the claimant establishing each of the necessary elements of a *prima facie* case by a preponderance of the evidence under the *McDonnell-Douglas* framework "drops from the case" once the landlord articulates (by reference to evidence in the record) a legitimate, nondiscriminatory reason for the nonrenewal. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 416, 113 S. Ct. 2742, 2747 (1993). Thus, a landlord's burden is satisfied once it explains what it has done and produces some evidence of legitimate, nondiscriminatory reasons therefore. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 n.2, 58 L. Ed. 2d 216, 219 n.2, 99 S. Ct. 295, 296 n.2 (1978). Such a satisfactory explanation destroys the inference of discrimination arising from the tenant's initial evidence. *Texas Department of Community Affairs v. Burdine*,

450 U.S. 248, 255 n.10, 67 L. Ed. 2d 207, 216 n.10, 101 S. Ct. 1089, 1095 n.10 (1981). At that point, the tenant assumes the burden of demonstrating through presentation of his case that the proffered reason was not the true reason for the decision, but that the handicap was. *Burdine*, 450 U.S. at 256, 67 L. Ed. 2d at 217, 101 S. Ct. at 1095.

In considering the above analysis, it is important to not lose sight of the fact that the burden shifting that occurs in a discrimination case under *Burdine* is not a substitute for the basic requirement that, in the end, the fact finder be satisfied that the person charged with unlawful discrimination actually did so. The *Burdine* analysis is merely the implementation of "certain modes and orders of proof." *St. Mary's*, 509 U.S. at 514, 125 L. Ed. 2d at 421, 113 S. Ct. at 2751. This means, in this case, that the ultimate burden of persuasion that Habitat intentionally discriminated against McClure remained at all times during the trial upon McClure. *Burdine*, 450 U.S. at 253, 67 L. Ed. 2d at 215, 101 S. Ct. at 1093-94. Thus, even if McClure established a *prima facie* case of discrimination and also that Habitat's proffered reasons for nonrenewal were pretextual, we would still be required to uphold the trial court's judgment in favor of Habitat if the record supported the conclusion that McClure had failed to carry his ultimate burden of proving that Habitat intentionally discriminated against him because of his handicap. *St. Mary's*, 509 U.S. at 514, 125 L. Ed. 2d at 421, 113 S. Ct. at 2751. Although this aspect of the law of discrimination was vigorously attacked by the dissent in *St. Mary's* (see *St. Mary's*, 509 U.S. at 525-43, 125 L. Ed. 2d at 428-40, 113 S. Ct. at 2756-66 (Souter, J., dissenting)), the majority of the Court made clear that a fact finder may enter judgment against the plaintiff in a discrimination case simply because, in its view, the evidence is insufficient to warrant a finding otherwise.

Since this case was tried on the merits, the burden-shifting analysis of *McDonnell-Douglas* need not govern our review of the trial court's judgment. Our only inquiry now is whether the record supports the ultimate finding that McClure's handicap was not the reason for the nonrenewal of his lease. *Roper v. Peabody Coal Co.*, 47 F.3d 925, 928 (7th Cir. 1995); *St. Mary's*, 509 U.S. at 511, 125 L. Ed. 2d at 418-19, 113 S. Ct. at 2749. Thus, while McClure devotes a great amount of discussion to the four elements of the *McDonnell-Douglas* framework, those elements have merged upon Habitat's explanation of non-discriminatory reasons for nonrenewal into the ultimate issue of fact faced by the trial court: did the evidence presented establish that Habitat, in not renewing the lease, intentionally discriminated against McClure on the basis of his handicap?

■ In nonjury cases, the trial judge, as the trier of fact, is in a po-

sition superior to a court of review to observe the demeanor of witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive. *In re Application of the County Treasurer*, 131 Ill. 2d 541, 549, 546 N.E.2d 506 (1989). Where the testimony is conflicting in a bench trial, the findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence. *In re Application of County Treasurer*, 131 Ill. 2d at 549. On appeal, the reviewing court must take questions of testimonial credibility as resolved in favor of the prevailing party, and must draw from the evidence all reasonable inferences in support of the judgment. *Kinsey v. Scott*, 124 Ill. App. 3d 329, 336, 463 N.E.2d 1359 (1984).

We have carefully reviewed the record and the evidence that was presented at trial. We find that the trial court's ruling against McClure was not against the manifest weight of the evidence, particularly in light of evidence presented which tended to show that McClure was unwilling or unable to live up to the non-financial requirements of his lease, even if Habitat had offered McClure a "reasonable accommodation" and been willing to renew his lease.

Mr. Stumfoll testified, for example, that McClure had several significant overflows of water in his apartment. On one such incident Stumfoll recalled water "gushing out of the ceiling" in the compactor room four floors below McClure's apartment. This leak required the extraction of over 50 gallons of water. Mr. Stumfoll stated that while he was cleaning up the water in McClure's apartment, he observed the plug in the tub and the water running over its edge. He also recalled that McClure had tub overflows "four or five times" and "on the toilet, it would probably be more than that."

Ms. Simmons testified that McClure again overflowed his bathtub in January 1993, characterizing that flood as "substantial." She also recalled that on March 8, 1993, she received a complaint about a considerable disturbance in McClure's apartment. Her investigation of that complaint revealed a woman inside McClure's apartment screaming that she had been locked in the apartment by Mr. McClure. According to Simmons, the woman was hysterical.

Ms. Parsons confirmed that Habitat's counsel, Mr. Watts, told her McClure had overflowed his bathtub on several occasions, causing inconvenience and expense, and that on one occasion "someone had gotten locked in to Mr. McClure's apartment and management had to force open the lock on the front door."

Clearly, with such evidence presented, the trial court could reasonably have concluded that McClure represented an undesirable tenant independent of his mental handicap. The court could also have reason-

ably determined that no amount of "reasonable accommodation" would assure the safety of Habitat's property and tenants so long as McClure remained as a tenant in the building.

While it is true that McClure presented evidence that other tenants had more serious bathtub overflows and that these tenants had their leases renewed, it was for the trial court to determine the significance of this evidence. More importantly, we note that McClure offered no evidence that Habitat had renewed the leases of other tenants who had imprisoned third parties in their apartments. Certainly Mr. McClure's tendency to overflow his bathtub and toilets, when combined with his conduct in trapping Roseanne Borisich inside his home, presented Habitat with sufficient reason to wish to end its relationship with McClure, independent of McClure's handicap.

McClure strongly urges Habitat's reasons were established as being pretextual because Mr. Watts allegedly told Ms. Parsons that the building was not capable of providing services to help people with disabilities like Mr. McClure's handicap. However, Habitat offered evidence that, with regard to at least 24 other residents at Elm Street Plaza, Habitat made accommodations to people who were handicapped. Moreover, Habitat also produced evidence that from January 1992 through January 1994, Habitat refused to renew leases at Elm Street Plaza for at least three persons who were not handicapped or perceived by Habitat to be handicapped. The trial court was not required to accept Ms. Parsons' recollection of her conversation with Mr. Watts as accurate or significant with regard to whether McClure actually suffered discriminatory treatment.

Section 2—1110 of the Code of Civil Procedure states:

> "In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered." 730 ILCS 5/2—1110 (West 1996).

The court's ruling on a section 2—1110 motion will not be overturned unless it is against the manifest weight of the evidence. *Zannini v. Reliance Insurance Co. of Illinois, Inc.*, 147 Ill. 2d 437, 449, 590 N.E.2d 457 (1992). Here we conclude that the trial court's ruling in favor of Habitat was not against the manifest weight of the evidence presented. The trial court's decision to enter judgment in favor of Habitat at the close of McClure's case is not, therefore, subject to reversal.

■ We next briefly address McClure's evidentiary objections. We do so, however, with a recognition that the admission of evidence is

within the sound discretion of trial judge and will not be reversed absent an abuse of discretion to the prejudice of the appellant. *People v. Morrow*, 256 Ill. App. 3d 392, 396, 628 N.E.2d 550 (1993); *Jackson v. Pellerano*, 210 Ill. App. 3d 464, 471, 569 N.E.2d 167 (1991). Our courts have repeatedly held that parties are not entitled to an error-free trial, but only a fair one, free of substantial prejudice. *Cerveny v. American Family Insurance Co.*, ·255 Ill. App. 3d 399, 413, 626 N.E.2d 1214 (1993). A party is not entitled to a reversal based on ruling on evidence unless the error was substantially prejudiced and materially affected the outcome of the trial. *Watkins v. American Service Insurance Co.*, 260 Ill. App. 3d 1054, 1065, 631 N.E.2d 1349 (1994). The burden rests with the party seeking reversal to establish prejudice. *Watkins*, 260 Ill. App. 3d at 1065. Further, in a bench proceeding, the well-established presumption is that a court considered only competent evidence in reaching its decision and that the admission of incompetent evidence is harmless. *In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes and/or Assessments for the Year 1985 & Prior Years*, 219 Ill. App. 3d 396, 405, 579 N.E.2d 936 (1991). In a case tried by the court without a jury, error in admitting improper evidence is not grounds for reversal as long as there is sufficient competent evidence fairly tending to support the judgment. *Phillips v. Britton*, 162 Ill. App. 3d 774, 787, 516 N.E.2d 692 (1987).

██ McClure first argues that the trial court erred in allowing Habitat to present evidence of his conduct subsequent to November 1992, when Mr. Flood informed him that his lease would not be renewed. We disagree with McClure's argument, however, and conclude that the trial court properly allowed testimony regarding the parties' subsequent conduct. The evidence presented was that McClure's lease was renewed by Habitat through March 31, 1993. Until this day, McClure suffered no legally recognizable injury from Habitat's alleged handicap discrimination. Thus, even if Flood and Habitat planned to unlawfully discriminate against McClure in November 1992 by not renewing his lease, and even if Habitat told McClure of its intention in this regard, Habitat was free to argue that, in the end, it was McClure's subsequent conduct which was the motivation behind its decision to not renew McClure's tenancy, independent of Flood's comments.

██ McClure also contends that the trial court erroneously denied his motion to compel production of certain tenant files pursuant to his fifth set of document requests, filed August 26, 1996. That request sought production of "all documents" relating to 18 tenants at Elm Street Plaza "who were charged late fees for late rent or nonpayment

of rent or who received five-day notices for nonpayment of rent or late payment of rent from January 1, 1992 to December 31, 1994, including, but not limited to, work orders, complaint forms, bills and receipts for repairs." McClure argues that because the reasons given by Habitat for not renewing his lease were numerous, part of a broad "constellation of factors," he was entitled to all of these documents.

McClure filed his fifth document request pursuant to the trial court's order of March 7, 1996, which granted him leave to file additional discovery after the prior discovery cutoff date only with regard to the two additional "new reasons" given by Mr. Flood during his discovery deposition on December 4, 1995. Those reasons were McClure's late rent payments and the improper disposal of garbage. Yet McClure went beyond the trial court's order of March 7, 1996, in his request and sought all documents in the files of several tenants, including those relating to work orders, complaint forms, bills and receipts for repairs. He does not deny that Habitat produced all documents referenced in his fifth request which pertained to late fees or late payments. Habitat objected to producing any documents beyond those pertaining to late rent payment as beyond the scope of the March 7, 1996, order and not relevant to the issue of late payment of rent.

In the area of pretrial discovery, the court's discretionary powers are extremely broad. *Popeil v. Popeil*, 21 Ill. App. 3d 571, 573-74, 315 N.E.2d 629 (1974). Absent a manifest abuse of discretion, the pretrial discovery rulings of the circuit court will not be interfered with on appeal. *Brostron v. Warmann*, 190 Ill. App. 3d 87, 91, 546 N.E.2d 3 (1989).

Here, the record discloses that McClure went beyond the limited discovery available following the December 29, 1995, cutoff. Moreover, Habitat had already complied with his prior voluminous discovery requests. In his fourth set of document requests, McClure had sought all documents regarding the failure of any tenants at Elm Street Plaza to either pay rent or pay rent on time. In his third set of document requests, McClure sought all documents—including work orders, complaint forms, bills and receipts for repairs—that related to any incidents of water damage at Elm Street Plaza for the period from January 1, 1992, to January 1, 1995. In his second set of document requests, McClure sought all documents relating to any Elm Street Plaza tenant, including requests for repairs, maintenance or service. McClure already had, therefore, ample opportunity to obtain comparative evidence in discovery. Accordingly, we find no error.

McClure also contends that the trial court's exclusion of testimony from Lisa Parsons as to conversations she had in connection with the settlement of McClure's 1992 case against Habitat was erroneous. That case was predicated upon McClure's failure to pay

rent and was settled by McClure's mother paying the delinquent rent. The trial court properly refused to allow Ms. Parsons to testify as to what Habitat's attorney indicated "in terms of" that settlement. In fact, Ms. Parsons had already testified that the settlement terms of the 1992 case were that McClure agreed to have his mother once again as the guarantor on his lease; Habitat agreed to enter into a new lease with McClure that went from May of 1992 until December of 1992; McClure's mother would pay all the rents and arrears that were outstanding at the time; and that the agreement did not specify what was going to happen at the end of that lease. After the objection to McClure's question was sustained, he rested and failed to make an offer of proof. One week later, McClure asked the court to allow an offer of proof as to Ms. Parsons' proposed testimony as to a conversation she had with one of Habitat's attorneys when the nonpayment case was settled. That request was properly denied since an offer of proof is only useful if it demonstrates that the question asked would have produced relevant testimony. *In re Marriage of Strauss*, 183 Ill. App. 3d 424, 428, 539 N.E.2d 808, 811 (1989). Here, the evidence attempted to be elicited were settlement agreement negotiations and were therefore inadmissible. *Schnuck Markets, Inc. v. Soffer*, 213 Ill. App. 3d 957, 979, 572 N.E.2d 1169 (1991). Further, the evidence was clear that the settlement agreement reached by the parties in the 1992 case did not resolve the question of what was going to happen at the end of the lease which would expire December 31, 1992. Thus, even if Ms. Parsons had been allowed to introduce testimony that Habitat's attorney unsuccessfully sought as part of that settlement an agreement by McClure that he would vacate the premises at the end of that lease, such testimony would have no bearing on the issue of whether Habitat unlawfully discriminated against McClure. The fact that Habitat's attorney may have attempted to obtain a possession order in the 1992 case as part of a settlement with McClure added no probative value to the issue of discrimination (which the trial court rejected) and plainly would not have changed the court's decision.

Likewise, the trial court's exclusion of portions of Wendy Adams' evidence deposition was within the trial court's sound discretion. Ms. Adams was a Habitat employee who had observed McClure and testified that she thought he was the kind of person that might have been better off taking psychiatric drugs. McClure wished to use this testimony to establish the fact that Habitat was aware of his mental disability at the time it refused to renew his lease. However, other more probative evidence was admitted to establish this aspect of McClure's case, and it is settled law that the trial court is not required to admit redundant evidence. *Davis v. International Harvester Co.*, 167

Ill. App. 3d 814, 825, 521 N.E.2d 1282 (1988); *Yassin v. Certified Grocers of Illinois, Inc.*, 150 Ill. App. 3d 1052, 1060-61, 502 N.E.2d 315 (1986).

Similarly, we find no reversible error in the trial court's decision to exclude letters written by Michelle Simmons to Alice Battle, another of Habitat's residents at Elm Street Plaza, since they did not relate directly to McClure and were beyond the scope of cross-examination. The letters addressed problems that Simmons had with overflowing water in her apartment, which McClure claimed were similar to the problems he had with water. However, McClure failed to preserve his objection to the court's decision to exclude the letters by making a proper offer of proof. *A.W. Wendell & Sons, Inc. v. Qazi*, 254 Ill. App. 3d 97, 118, 626 N.E.2d 280 (1993). Although McClure was later permitted by the court to mark the letters as an offer of proof for the record, the letters are not particularly helpful to our review because we are unable to ascertain their specific relevance. For example, the letters do not explain whether the overflows experienced by Ms. Simmons were related to her own negligent or intentional conduct, or whether the cause of Simmon's overflows were the result of faulty plumbing.

We lastly address the trial court's decision to award Habitat $27,329.70 in attorney fees and costs. The court did so pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137), section 10—102 of the IHRA (775 ILCS 5/10—102(a) (West 1996)) and section 813 of the FHAA (42 U.S.C. § 3813(a) (1976)).

First, it is clear that Supreme Court Rule 137 cannot serve as a basis of the court's award of fees. The purpose of Supreme Court Rule 137 is to punish litigants and their attorneys who certify pleadings that are false or frivolous or have no basis in law. *Hernandez v. Williams*, 258 Ill. App. 3d 318, 320, 632 N.E.2d 49 (1994). The crucial question in Rule 137 litigation is whether the attorney or party signing the pleadings should have known at the time of his or her certification that the pleading was not well grounded in fact or warranted by existing law. See *Village of Lake Barrington v. Hogan*, 272 Ill. App. 3d 225, 235, 649 N.E.2d 1366 (1995). The rule is penal in nature and strictly construed. *In re Estate of J.M.*, 287 Ill. App. 3d 110, 116, 678 N.E.2d 15 (1997). We see nothing in this case that would indicate that McClure's claims, or Mandel's certification of McClure's claims, were frivolous or could be construed as a "false matter" when they were certified. Instead, all that can be said of the litigation, in our view, is that McClure failed to carry his burden of proof at trial. Such conduct is not sanctionable.

Although fees awarded under the terms of the Act or the

FHAA are not necessarily considered a sanction, and, thus, are more liberally granted than under Rule 137, the award of attorney fees and costs remains the exception, not the rule. In *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978), the Supreme Court established criteria for awarding attorney fees under Title VII of the Civil Rights Act of 1964 (see 42 U.S.C. § 1971 *et seq.* (1994)), as amended, to prevailing defendants. The Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment*, 434 U.S. at 421, 54 L. Ed. 2d at 657, 98 S. Ct. at 700. The Supreme Court noted that, in enacting the statute, Congress wanted to protect defendants from "burdensome litigation having no legal or factual basis" and identified this policy of protecting defendants from burdensome litigation as having the same importance as the congressional goal of encouraging plaintiffs to challenge invidious employment practices. *Christiansburg Garment*, 434 U.S. at 420, 54 L. Ed. 2d at 656, 98 S. Ct. at 699-700.

The rationale for reverse fee awards such as the one at issue in this case was further explained in *Foster v. Mydas Associates, Inc.*, 943 F.2d 139 (1st Cir. 1991), where the court stated:

"By shifting fees where warranted—or, for that matter, by sanctioning civil rights litigation that is frivolous and wasteful of judicial time—a judge actually benefits civil rights plaintiffs as a group by freeing up resources for worthy suits and protecting the integrity of the court as an institution." 943 F.2d at 146.

With these considerations in mind, we address the issue of whether the court's award of fees in favor of Habitat and against McClure was proper under the terms of either the Act or FHAA.

█ Habitat argues that the trial court decision to award reverse fees in this case was simply a matter within the trial court's sound discretion. We, however, can see nothing in this record that would support such an award.

In considering the evidence in our analysis above, we have, necessarily, considered only the question of whether the trial court's decision was against the manifest weight of the evidence, *i.e.*, whether it could be justified in light of the evidence presented. The fact that the court had sufficient evidence to rule as it did does not, however, indicate that McClure's case can be fairly characterized as a waste of judicial time or as being frivolous. Again, the evidence in this case, in our view, could well have convinced a different fact finder of the merits of McClure's contentions. Although we recognize that, as an appellate

court, we should not vacate an award of attorney fees absent a clear abuse of discretion (*De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 584 N.E.2d 933 (1991)), we conclude that it is proper to do so in this case. Accordingly, the court's award of $27,329.70 in favor of Habitat and against McClure and Mandel is vacated.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part and the award of attorney fees is vacated.

Affirmed in part and reversed in part; attorney fees vacated.

CAMPBELL, P.J., and QUINN, J., concur.