# Illinois Official Reports

## Appellate Court

***Kroot v. Chan*, 2017 IL App (1st) 162315**

| | |
|---|---|
| Appellate Court Caption | MEREDITH PAIGE KROOT and JASON M. KROOT, Plaintiffs-Appellees, v. SHU B. CHAN and YVONNE LAU, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-2315 |
| Rehearing denied<br>Filed | September 8, 2017<br>September 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-12254; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Dismissed in part, affirmed in part, vacated in part, and remanded. |
| Counsel on Appeal | Ben Goldwater, of Goldwater & Associates, of Chicago, for appellants.<br><br>Kirsten M. Dunne, of Goldberg Weisman Cairo, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Rochford and Delort concurred in the judgment and opinion. |

¶ 1        The defendants, Shu B. Chan and Yvonne Lau, appeal from orders of the trial court (1) denying their motion for summary judgment; (2) entering judgment against them and in favor of the plaintiffs, Meredith Paige Kroot (Meredith) and Jason M. Kroot (Jason), in the sum of $64,518.67 "plus costs and fees" on the plaintiffs' claims for a violation of the Residential Real Property Disclosure Act (Act) (765 ILCS 77/1 *et seq.* (West 2012)) and common law fraud; (3) entering judgment against them and in favor of the plaintiffs in the sum of $28,130.16 on the plaintiffs' petition for attorney fees and costs; and (4) denying their motion to vacate the judgment for attorney fees and costs. For the reasons that follow, we dismiss the defendants' appeal from the denial of their motion for summary judgment, affirm the trial court's $64,518.67 judgment in favor of the plaintiffs, vacate the trial court's $28,130.16 judgment in favor of the plaintiffs for attorney fees and costs, and remand this cause to the trial court for further proceedings.

¶ 2        The following factual recitation is taken from the pleadings filed by the parties and the evidence introduced at the trial of this cause.

¶ 3        In 2002, the defendants purchased the property commonly known as 3833 North Claremont Street, Chicago, Illinois, and improved with a single family residence (hereinafter referred to as the Property). The defendants resided in the Property from 2002 until December 2011 when they moved to a condominium unit.

¶ 4        On April 12, 2013, in preparation for their sale of the Property, the defendants executed a Residential Real Property Disclosure Report (Disclosure Report) as required by sections 20 and 35 of the Act (765 ILCS 77/20, 35 (West 2012)), in which they claimed no knowledge of flooding or recurrent leakage problems in the basement, defects in the basement, or material defects in the walls and floors. The plaintiffs were given a copy of the Disclosure Report and, on May 3, 2013, executed a written offer to purchase the Property which the defendants accepted on May 7, 2013 (hereinafter referred to as the Contract). In a letter executed by the parties' attorneys, the Contract was amended in a number of respects. Included within that letter is a representation that the defendants had no knowledge of the existence of any mold within the Property nor had there been any attempt to remove any substance from the sump pump room wall. It was also represented that there had been no flooding or water infiltration during the time that the defendants owned the Property. There is a paragraph within the letter, which states that the plaintiffs had the Property inspected and that the inspection noted "a number of issues" for which the plaintiffs requested a credit. Although executed by their respective attorneys, the letter was not signed by either the plaintiffs or the defendants. The closing of the sale and purchase of the Property contemplated by the Contract took place on June 25, 2013.

¶ 5        On November 4, 2013, the plaintiffs commenced the instant action with the filing of their four-count complaint against the defendants. According to the complaint, within 24 hours of purchasing the Property, the plaintiffs experienced water infiltration in the basement through the walls and floors. They asserted that there had been longstanding and recurring water infiltration problems with the Property during the defendants' ownership and that before and after signing the Disclosure Report and the Contract, the defendants knew it was likely that there was mold in the basement. According to the complaint, there were material defects in the basement, flooring, and walls of the Property along with mold caused by flooding and

water infiltration. The plaintiffs alleged that they would not have gone forward with the closing for the agreed upon price had they known of the defects in the Property. The plaintiffs sought judgment for the costs of repairing the Property, all consequential damages, attorney fees, and costs. Count I of the complaint set forth a claim pursuant to the Act against both defendants, count II asserted a claim against the defendants for a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2012)), count III was a common law fraud action against the defendants, and count IV was a negligence claim against Lau only.

¶ 6    The defendants answered the complaint, denying the material allegations. On June 24, 2014, they filed a motion to dismiss count II of the complaint, which the trial court granted without opposition from the plaintiffs. On January 27, 2015, the defendants filed a motion seeking summary judgment in their favor on the three remaining counts, alleging, *inter alia*, that, during the time that they owned the Property, they did not possess actual knowledge of any water infiltration or mold. The trial court denied the motion on April 21, 2015.

¶ 7    A bench trial was conducted on counts I, III, and IV of the complaint, following which the trial court entered its judgment order on March 28, 2016, finding in favor of the plaintiffs and against Chan on count I and in favor of the plaintiffs and against both defendants on count III. The trial court entered judgment in favor of the plaintiffs and against the defendants in the sum of $64,518.67, plus costs and fees. The trial court found in favor of Lau and against the plaintiffs on counts I and IV.

¶ 8    On April 19, 2016, the plaintiffs filed their petition, seeking attorney fees and costs, and on June 23, 2016, the trial court entered an order awarding them $28,130.16. On July 8, 2016, the defendants filed their motion to vacate the order of June 23, 2016, which the trial court denied on August 9, 2016. On August 22, 2016, the defendants filed their notice of appeal from the trial court's orders of April 21, 2015; March 28, 2016; June 23, 2016; and August 9, 2016.

¶ 9    As to the April 21, 2015 order, denying their motion for summary judgment, the defendants argue that they were entitled to judgment as a matter of law by reason of the plaintiffs' failure to produce any evidence that they made fraudulent representations concerning their knowledge of flooding or mold at the Property or falsified the Disclosure Report. In response, the plaintiffs argue that the order is not reviewable. We agree with the plaintiffs.

¶ 10    An order denying a motion for summary judgment is interlocutory in nature and, subject to an exception not present in this case, is not appealable. *In re Estate of Funk*, 221 Ill. 2d 30, 85 (2006). Any error in the denial of a motion for summary judgment merges into the final judgment rendered by the trial court, and it is from that final judgment that an appeal is taken. *Id.*; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355 (2002). Consequently, we dismiss the defendants' appeal from the trial court's order of April 21, 2015, denying their motion for summary judgment.

¶ 11    Next, the defendants argue that the trial court's $64,518.67 judgment entered on March 28, 2016, is against the manifest weight of the evidence. Before addressing the merits of the defendants' argument in this regard, the plaintiffs argue that this court lacks jurisdiction to review the March 28, 2016, judgment, contending that, because the defendants failed to file a posttrial motion directed against that judgment, their August 22, 2016, notice of appeal from that order was untimely. According to the plaintiffs, the defendants had until July 23, 2016,

to file their notice of appeal from the March 28, 2016, judgment. They reason that the trial court's order of June 23, 2016, awarding the plaintiffs $28,130.16 for attorney fees and costs resolved the last pending claim, and as a consequence, the defendants had until July 23, 2016, to file their notice of appeal from the March 28, 2016, judgment. The plaintiffs contend that, since the defendants' motion to vacate filed on July 8, 2016, was addressed only to the June 23, 2016, fee award, the motion did not toll the time for the filing of a notice of appeal from the March 28, 2016, judgment, and therefore, their August 22, 2016, notice of appeal did not vest this court with jurisdiction to review the March 28, 2016, judgment. We disagree with the plaintiffs' jurisdictional argument.

¶ 12        Illinois Supreme Court Rule 303(a)(1) (eff. Jan. 1, 2015) provides that a notice of appeal must be filed

> "within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order ***."

An order or judgment is final for purposes of Rule 303(a) if it "terminates the litigation between the parties on the merits of the cause or disposes of the rights of the parties either upon the entire controversy or upon some definite part thereof." *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 982 (1994). However, Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) provides that, if multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all claims "only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." The policy considerations behind Rule 304(a) are the discouragement of piecemeal appeals in the absence of some compelling reason and the removal of any uncertainty as to the appealability of a judgment which was entered on less than all of the matters in controversy. *Carle Foundation v. Cunningham Township*, 2017 IL 120427, ¶ 15; *In re Marriage of Lentz*, 79 Ill. 2d 400, 407 (1980).

¶ 13        Contained within both count I and count III of the plaintiffs' complaint is a prayer for an award of attorney fees. A prayer for an award of attorney fees is a claim within the meaning of Rule 304(a). *F.H. Prince*, 266 Ill. App. 3d at 983. The trial court's judgment order of March 28, 2016, left unresolved the issue of attorney fees and, therefore, was not a final judgment as to all of the claims in the action. As to that order, the trial court never made a written finding that there was no just reason for delaying either enforcement or appeal. Consequently, the judgment order of March 28, 2016, was neither enforceable nor appealable when entered and was subject to revision at any time before the entry of an order disposing of the plaintiffs' attorney fee claim. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 14        In its order of June 23, 2016, the trial court resolved the plaintiffs' claim for attorney fees. Therefore, as of that date, both the judgment order of March 28, 2016, and the order of June 23, 2016, were appealable pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a)(1) (eff. Jan. 1, 2015). Although the March 28, 2016, judgment order was originally appealable upon the entry of the June 23, 2016, order, the issue remains as to the effect, if any, that the defendants' July 8, 2016, motion to vacate the June 23, 2016, order had upon the time for filing a notice of appeal from the judgment entered against them on March 28, 2016.

¶ 15     The trial court retains jurisdiction for 30 days after the entry of a final order or judgment. *Brewer v. National R.R. Passenger Corp.*, 165 Ill. 2d 100, 105 (1995). On July 8, 2016, the defendants in this case filed their timely motion to vacate the attorney fee award of June 23, 2016. Until the trial court ruled on the defendants' motion to vacate, the June 23, 2017, order was not a final order. *In re Marriage of Uphoff*, 99 Ill. 2d 90, 94 (1983) (as long as any party's posttrial motion remains undisposed, the underlying order is not final). As such, the plaintiffs' claim for an award of attorney fees remained pending; and absent a written finding pursuant to Rule 304(a), the judgment order of March 28, 2016, was not enforceable or appealable. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Once the defendants filed their July 8, 2016 motion to vacate the June 23, 2016, order, the time for the filing of an appeal from the March 28, 2016, judgment order did not begin running until the trial court disposed of the motion. See *In re Marriage of Uphoff*, 99 Ill. 2d at 94.

¶ 16     The trial court disposed of the defendants' motion to vacate on August 9, 2016. Therefore, the time for filing a notice of appeal from both the March 28, 2016, judgment order and the June 23, 2016, order commenced running on that date. The defendants filed their notice of appeal on August 22, 2016, within the 30 day period provided in Rule 303(a)(1), vesting this court with jurisdiction to review both orders. Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015).

¶ 17     Having rejected the plaintiffs' jurisdictional challenge, we will address the merits of the defendants' argument that the trial court's judgment order of March 28, 2016, is against the manifest weight of the evidence.

¶ 18     In their answer to the plaintiffs' complaint, the defendants admitted that the Disclosure Report and the Contract contained representations that they had no knowledge of the existence of mold within the Property, that they had made no attempt to remove any substance from the sump pump room wall, and that no flooding or water infiltration occurred during the time that they owned the Property. The defendants contend, however, that the evidence introduced during the trial of this matter failed to establish that they made fraudulent representations concerning their knowledge of flooding or mold at the Property or that they falsified the Disclosure Report. They do not dispute the fact that there existed water infiltration and mold at the Property, but assert that evidence of those conditions only became apparent as the result of a destructive investigation that occurred after the plaintiffs took possession of the Property.

¶ 19     When, as in this case, a party challenges the sufficiency of the evidence to support a judgment following a bench trial, our standard of review is whether the trial court's judgment is against the manifest weight of the evidence. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). As the trier of fact, the trial judge in a bench trial is in a superior position to assess the credibility of the witnesses and determine the weight to be accorded their testimony. *Buckner v. Causey*, 311 Ill. App. 3d 139, 144 (1999). When contradictory testimony that could support conflicting conclusions is given during a bench trial, we will not disturb the trial court's factual findings based upon that testimony unless a contrary finding is clearly apparent. *Id.*

¶ 20    The following factual summary is taken from the testimony and evidence introduced during the trial.

¶ 21    The plaintiffs testified that, prior to submitting an offer to purchase, they visited the Property with their real estate agent, Violet Sudler. The plaintiffs and Sudler stated that they saw new carpet in the basement, and the basement walls looked and smelled as if they had been recently painted. After examining the home, the plaintiffs and Sudler reviewed the Disclosure Report. The defendants admitted signing the Disclosure Report, and Chan testified that he understood that the contents of the document could affect the amount of money that a potential buyer would be willing to offer. After reviewing the Disclosure Report, the plaintiffs submitted an offer to purchase the Property which the defendants accepted on May 7, 2013.

¶ 22    After the defendants accepted their offer to purchase, the plaintiffs arranged for an inspection of the Property. In a report dated May 9, 2013, the inspector noted certain repairs which were needed, but did not report water or mold related problems in the basement. Thereafter, the plaintiffs engaged a contractor, Scott Elliott, to perform the necessary repairs identified in the inspection report. According to Elliott, he visited the Property for the purpose of estimating the cost to perform the repairs, and when he went through the home, he saw that the basement had been freshly painted and had new carpeting in the main room.

¶ 23    According to the plaintiffs, they again inspected the Property on May 22, 2013, in the company of Sudler and the defendants' realtor, Sharleen Chan. The plaintiffs and Sudler testified that, during that inspection, they noticed a discolored area along the lower portion of a wall in the sump pump room. The plaintiffs stated that they were concerned that the discoloration could be an indication of water infiltration or mold and expressed that concern to Sharleen Chan. Jason testified that he made a subsequent visit to the Property for the purpose of reexamining the sump pump room wall, but found that the discolored area had been painted. Sudler testified that she visited the Property in the presence of Chan and noticed that the discoloration on the sump pump wall had been painted over. According to Sudler, she confronted Chan about the painting of the wall, and he stated he had the wall painted so that it would look nice for the plaintiffs. Meredith testified that, when their attorney, Judy DeAngelis, was advised of the condition, she recommended that they obtain written confirmation from the defendants that they had not experienced any water or mold problems at the Property. Based upon that recommendation, DeAngelis forwarded a letter to the defendants' attorney, Phillip Grossman, requesting certain modifications to the Contract. As noted earlier, that letter contains a representation that the defendants had no knowledge of the existence of any mold within the Property nor had there been any attempt to remove any substance from the sump pump room. It was also represented that there had been no flooding or water infiltration during the time that the defendants owned the Property. The plaintiffs' complaint alleges, and the defendants' answer admits, that those representations are contained within the Contract, and the plaintiffs testified that, without the representations as an amendment to the Contract, they would not have purchased the Property. The letter also contains a revised paragraph which states as follows:

    "Further, [the plaintiffs] have had a professional inspection performed on the property and while the inspector noted a number of issues in his report, [the plaintiffs] are requesting a credit as to certain repair issues. These issues include extensive masonry work to the exterior of the house and the garage, roof issues related to both

the house and the garage, electrical, Building Code violations, mold and plumbing. With that being said, please find attached estimates from E.nZ Masonry, Inc. and Elliott Remodeling which delineate the necessary repairs and the costs related to same. With that being said, please be advised that it is our understanding that the parties have agreed that [the defendants] will tender a $5,000.00 credit to [the plaintiffs] at closing in lieu of making any repairs."

¶ 24    The parties closed the purchase/sale transaction on June 25, 2013. At closing, the defendants gave the plaintiffs the agreed upon $5000 credit against the purchase price. According to Grossman, the credit was intended to cover "all of the matters referenced" in the Contract documents. However, Jason and Sudler testified that the credit was only for the items in need of repair that were listed on the inspector's report and did not include mold or water infiltration problems.

¶ 25    In the evening of June 25, 2013, there was a heavy rainfall. Elliott testified that, when he went to the Property on June 26, 2013, to begin making repairs, he discovered water leaking through the walls and floor of the sump pump room. Upon being notified of the condition, Jason went to the Property. He testified that he saw water coming in where the floor meets the sump pump room wall, although the sump pump itself was dry.

¶ 26    Meredith and Jason testified that they authorized Elliott to investigate the source of the water. According to Elliott, he opened the sump pump room wall and was able to see water coming in from both sides of the foundation. He testified that he rolled back the carpet and padding in the main room in the basement, revealing water damage to the underlying floor. Elliott characterized the damage as "major" and looked as though it "had been there for a while." He stated that, as he kept working, he discovered evidence of longstanding water infiltration problems and mold, including black mold on the underside of the plywood subflooring, standing water on the Visqueen plastic sheeting below the plywood, rotting plywood subflooring under the carpet padding, moisture and mold on the lower 18 inches of the drywall on the south wall of the basement, moisture on the plywood behind the drywall, standing water behind a wall plate, and evidence of water infiltration through the drywall in the area where the new carpeting had been laid. Elliott estimated that the damage had occurred over approximately two years, but no less than one year. He testified that there was no vapor barrier for the basement walls resulting in water infiltration during heavy rain falls.

¶ 27    Thomas Lauletta, who resides in the home directly to the south of the Property, testified that sometime between April and June of 2013 while the defendants owned the Property, he noticed carpeting in the trash cans for the Property and could see rust-colored lines that appeared to be water stains on the underside of the discarded carpeting. He also testified to seeing a water-stained recliner chair on the Property.

¶ 28    Both defendants testified that they had no knowledge of water infiltration or mold in the basement of the Property or in the sump pump room. According to Chan, he never saw water, water stains, or mold in the sump pump room or in the basement during the nine years that he and Lau lived at the Property. Chan stated that, on the advice of his realtor, Sharleen Chan, that he "spruce up" the house, he hired Home Improvements Experts to perform work at the Property, which began on April 15, 2013. He testified that, although he went into the basement while the work was being performed, he never saw the contractor replacing the carpeting. He denied seeing any stains on the basement carpeting or on the leather chair that he removed from the basement. He also denied ever being at the Property when Sudler

confronted him about painting the sump pump room wall or that he painted over any discoloration or instructed anyone else to do so. Chan testified that, although he was advised that there was discoloration on the sump pump room wall, he never saw the discoloration. He admitted, however, that he instructed his contractor to paint any dirty areas on the walls in the basement, including the walls in the sump pump room.

¶ 29        Krzystof Wais, the owner of Home Improvements Experts, testified that the work his company performed at the Property consisted of painting and replacing the carpeting in the basement. He stated that, although he did not personally perform the work, he inspected the house before the work began and admitted seeing some stains on the carpeting and some dark spots on the basement walls. According to Wais, it was his understanding that his company was to replace the carpeting and paint the basement walls, including the dark spots in the sump pump room.

¶ 30        Grossman and Gary Falzer, friends of the defendants, both testified that they had been in the basement of the Property on many occasions when the defendants lived there and never saw water, moisture, mold, or water marks on the walls. However, both admitted that they had never been in the sump pump room. Falzer also testified that the chair he helped Chan remove from the house was not wet or water damaged.

¶ 31        After the parties rested and made their closing arguments, the trial court found in favor of the plaintiffs and against Chan on count I of the complaint, the claim brought pursuant to the Act, and against both defendants on count III, the common-law fraud claim. In his oral statements, the trial judge specifically found the testimony of the plaintiffs, Sudler, and Lauletta credible. Additionally, the trial judge stated that he did not find Chan's testimony credible. As to count I, the trial court found that Chan made false statements in the Disclosure Report relating to flooding and leakage. As to count III, the trial court found that the defendants had made material misrepresentations of fact upon which the plaintiffs relied to their detriment. On March 28, 2016, the trial court entered its judgment in favor of the plaintiffs and against the defendants in the amount of $64,518.67, plus costs and fees. In its written judgment order, the trial court memorialized its findings in favor of the plaintiffs and against Chan on count I and in favor of the plaintiffs and against both defendants on count III, referencing the fact that it had made specific findings on the record related to the credibility of the witnesses.

¶ 32        The defendants have raised no argument challenging the trial court's computation of the plaintiffs' damages. They have only challenged the trial court's findings on the issues of liability. We believe, however, that the evidence contained within the record summarized above was sufficient to satisfy each of the elements necessary for recovery of damages under the Act and under a claim for common-law fraud.

¶ 33        Section 55 of the Act provides that if the seller of real property, such as Chan, provides a disclosure document prior to a conveyance which contains information which he knows to be false, he is liable for the actual damages sustained as a result. 765 ILCS 77/55 (West 2012). In order to recover for common-law fraud, a plaintiff is required to prove that (1) the defendant made a false statement of material fact, (2) the defendant knew that the statement was false, (3) the defendant intended to induce the plaintiff to act in reliance upon the statement, (4) the plaintiff reasonably relied upon the truth of the statement, and (5) the plaintiff suffered damage as a result of action in reliance upon the statement. *Board of Education of the City of Chicago v. A, C & S, Inc*, 131 Ill. 2d 428, 452 (1989).

¶ 34    Based upon the evidence in the record, the trial judge's credibility findings, and the inferences that the trial judge drew from the evidence, we are unable to find that the trial court's findings in favor of the plaintiffs on counts I and III of their complaint are against the manifest weight of the evidence. We, therefore, affirm the trial court's judgment of March 28, 2016.

¶ 35    Finally, the defendants argue that the trial court erred in awarding the plaintiffs $28,130.16 for attorney fees and costs without a hearing and based solely upon an invoice attached to their petition that was not supported by any other documentation. According to the defendants, the Attorney Invoice attached to the plaintiffs' fee petition as an exhibit is not a document kept in the ordinary course of business. They contend that numerous entries contained in the invoice are "mere guesses in the reconstruction of the time spent for which they seek an award of fees." Although there is no evidence in the record addressing the issue of whether the invoice supporting the plaintiffs' fee petition is a document kept in the ordinary course of business, we, nevertheless, find that it is insufficient, standing alone, to support an award of attorney fees.

¶ 36    The unsuccessful party in a civil action is not responsible for the payment of an opponent's attorney fees unless provided for by statute or agreement of the parties. *Ardt v. State*, 292 Ill. App. 3d 1059, 1063 (1997). Section 55 of the Act provides that, if the seller of real property provides a disclosure document that contains information known to be false, in addition to his liability for actual damages, the court may also award reasonable attorney fees. 765 ILCS 77/55 (West 2012). By the very terms of the statute, only those fees that are reasonable may be awarded, the determination of which is left to the discretion of the trial court.

¶ 37    A party seeking an award of attorney fees bears the burden of presenting sufficient evidence from which a trial court can make a determination as to their reasonableness. *Huss v. Sessler Ford, Inc.*, 343 Ill. App. 3d 835, 843 (2003); *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987). To justify an award of fees, "more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client." *Kaiser*, 164 Ill. App. 3d at 984. Rather, the petition for fees must specify the services performed, the attorney who performed the services, the time expended, and the hourly rate charged. *Huss*, 343 Ill. App. 3d at 843. Once presented with this information, the court should also consider the skill of the attorney performing the service, the novelty or difficulty of the issues and work involved, the usual and customary charges for comparable services, and the benefit to the client. *Kaiser*, 164 Ill. App. 3d at 984. An evidentiary hearing is not always necessary in order to determine reasonable attorney fees. A nonevidentiary proceeding is proper so long as the trier of fact can determine from the evidence presented, including a detailed breakdown to fees and expenses, what amount would be reasonable, and the opponent is not deprived of the opportunity to present evidence. See *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 495-96 (1996).

¶ 38    Although having entered an order on June 3, 2016, setting the plaintiffs' fee petition for hearing on June 23, 2016, the trial judge elected to rule on the petition without a hearing. The plaintiffs' petition for an award of attorney fees and costs in this case was supported by an exhibit captioned "Attorney Invoice," containing, in some cases, a date, a brief description of the services performed, the initials of the individual performing the service, and the hourly rate charged. However, for a number of charges, the only entry is "Assoc CMC" with no

description of the work performed. The descriptions of the services rendered as contained within the invoice are too vague and general to support a determination as to the reasonableness of the time expended for out-of-court work. Further, there is nothing in the exhibit that would enable a court to determine whether the information contained therein was compiled from records maintained in the ordinary course of business. As the defendants correctly argue, if the information contained in the Attorney Invoice was taken from original documents, then those documents should have been presented in court or made available to the defendants. *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367, ¶ 31.

¶ 39 We believe that the Attorney Invoice attached as an exhibit to the plaintiffs' fee petition, standing alone, is an inadequate basis upon which to predicate a finding of reasonableness or upon which to base an award of attorney fees and costs. Consequently, we vacate the trial court's order of June 23, 2016, which awarded the plaintiffs $28,130.16 for attorney fees and costs, and remand the matter back to the trial court with directions to hold an evidentiary hearing on the plaintiffs' petition.

¶ 40 Based upon the foregoing analysis, we dismiss the defendants' appeal from the trial court's order of April 21, 2015, denying their motion for summary judgment; affirm the trial court's $64,518.67 judgment entered on March 28, 2016, in favor of the plaintiffs and against the defendants; vacate the trial court's $28,130.16 judgment entered June 23, 2016, in favor of the plaintiffs and against the defendants for attorney fees and costs; and remand this cause to the trial court for further proceedings consistent with this opinion.

¶ 41 Affirmed in part, dismissed in part, vacated in part, and remanded.