2020 IL App (1st) 192075-U

SIXTH DIVISION
October 9, 2020

No. 1-19-2075

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ILLINOIS NEUROSPINE INSTITUTE, P.C., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 11980 |
| | ) | |
| CAROLYN BUTLER and | ) | |
| JOSEPH DOMBROWSKI, | ) | Honorable |
| | ) | Bridget Mary McGrath, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Griffin concurred in the judgment.

**ORDER**

*Held:* The trial court's finding that plaintiff failed to perform its obligations under the contract was not against the manifest weight of the evidence; affirmed.

¶ 1       Following a bench trial, the trial court found against plaintiff, Illinois Neurospine Institute, P.C., and for defendants, Carolyn Butler and Joseph Dombrowski, on plaintiff's claims for constructive trust against Butler and Dombrowski (Count I) and breach of contract against Butler (Count II). The trial court specifically found that plaintiff failed to show that it met its obligations under the parties' contract. Plaintiff appeals that decision, contending that the trial court's finding was against the manifest weight of the evidence. We affirm.

¶ 2                               I. BACKGROUND

¶ 3    This is the third time this case has been before this court on appeal. Our previous decisions, *Illinois Neurospine Institute, P.C. v. Butler*, 2015 IL App (1st) 143304-U, and *Illinois Neurospine Institute, P.C. v. Butler*, 2017 IL App (1st) 170047-U, set forth the facts leading up to each of those appeals. The following is a recitation of the relevant case history from these prior rulings as well as additional facts that are necessary for an understanding of this appeal.

¶ 4    In May 2009, Butler was injured in an automobile accident. Dombrowski, an attorney, represented Butler in her lawsuit against the driver of the other vehicle involved in the accident. From November 2009 through September 2010, Butler received medical treatment for her injuries, including discography and discectomy procedures, from plaintiff's owner, Dr. Ronald Michael.

¶ 5    In November 2009, plaintiff sent Dombrowski a notice of a physician's lien, stating that it claimed a lien against any claim by Butler as a result of Dr. Michael's performance of an independent medical examination on Butler. In a December 2009 response letter to plaintiff, Dombrowski requested that plaintiff send Butler's complete bill and medical records and that plaintiff explain how an independent medical examination created a lien in a personal injury case. In our 2015 order, we noted that the record on appeal did not contain any evidence that plaintiff responded to Dombrowski's letter. *Illinois Neurospine Institute, P.C.*, 2015 IL App (1st) 143304-U, ¶ 4.

¶ 6    On January 27, 2010, Butler signed a one-page document entitled "Financial Responsibility Statement" (the contract).  The contract stated, in relevant part, as follows:

"Payment Guarantee:

For and in consideration of services rendered by ILLINOIS NEUROSPINE INSTITUTE, patient (responsible person) hereby agrees to and guarantees payment of all charges incurred for the account of the patient.

\* \* \*

Assignment of Insurance Benefits:

Patient (responsible person) irrevocably assigns and transfers to ILLINOIS NEUROSPINE INSTITUTE all right, title and interest to medical reimbursement benefits under any and all applicable medical insurance policies covering patient for the payment of hospital and medical care being provided. Patient (responsible person) authorizes payment directly to ILLINOIS NEUROSPINE INSTITUTE of said medical reimbursement benefits.

Agreement to Pay Balance:

In the event that said medical insurance coverage is not sufficient to satisfy the charge in full, patient (responsible person) acknowledges that the resulting balance is not covered by this assignment and agrees to be fully responsible for the payment of any balance due. For any non-contracted insurance carriers, ILLINOIS NEUROSPINE INSTITUTE will submit a courtesy claim and if no payment is received in sixty (60) days, the balance will become patient responsibility. Patient (responsible person) acknowledges responsibility for any expenses incurred by ILLINOIS NEUROSPINE INSTITUTE for collecting any of the charges incurred on the account of the patient."

(Emphasis in original.)

¶ 7 Thereafter, Butler's personal injury case against the driver of the other vehicle settled for $325,000. *Illinois Neurospine Institute, P.C.*, 2015 IL App (1st) 143304-U, ¶ 7. Dombrowski

filed a motion to adjudicate liens of Butler's healthcare service providers, which did not include plaintiff. *Id.* In December 2010, the circuit court granted the motion to adjudicate liens. *Id.*

¶ 8        In May 2011, plaintiff filed the two-count complaint underlying this appeal. Count I alleged a theory of constructive trust against both Butler and Dombrowski for failure to adjudicate plaintiff's lien. Count II alleged breach of contract against Butler for failure to pay for the medical services provided by plaintiff. In July 2014, plaintiff filed a motion for summary judgment, arguing that there was no genuine issue of material fact with respect to the breach of contract claim because plaintiff provided services, Butler agreed to pay, and Butler failed to pay despite plaintiff's demand. Defendants responded, arguing that plaintiff breached the contract because, under the contract, plaintiff was responsible for submitting bills to Butler's insurance provider before any amount became due and it failed to do so.

¶ 9        The trial court granted plaintiff's motion for summary judgment and subsequently entered judgment against defendants. In granting the motion for summary judgment, the trial court found that the contract did not "expressly place a duty or burden upon [p]laintiff to submit the relevant bills directly to Butler's insurance provider." Rather, the trial court concluded that the contract "merely states that '[Butler] irrevocably assigns and transfers to [plaintiff] all right, title and interest to medical reimbursement benefits under any and all applicable medical insurance policies covering [Butler] for the payment of hospital and medical care being provided.' " The court stated that "the fact that plaintiff did not submit any bills to Butler's insurance" did not create a genuine issue of fact as to Butler's apparent failure to pay under the contract and that Butler did not provide any basis for her non-payment of the amount due under the contract such that plaintiff would be precluded from recovering.

¶ 10                           First Appeal

4

*Illinois Neurospine Institute, P.C. v. Butler*, 2015 IL App (1st) 143304-U

¶ 11     On appeal, this court reversed the trial court's decision granting plaintiff's motion for summary judgment, finding that a genuine issue of material fact existed as to both counts of plaintiff's complaint. *Illinois Neurospine Institute, P.C.*, 2015 IL App (1st) 143304-U, ¶ 47. Specifically, this court disagreed with the trial court and found that, according to the plain language of the contract and the parties' intent, "plaintiff had the duty to first bill Butler's insurance carrier before any amount became due" and there was a genuine issue of material fact regarding whether plaintiff performed under the contract. *Id.* ¶¶ 33-34. We also concluded that the language of the contract exemplified "the parties' intent to hold Butler responsible for any payment *not covered by insurance*." *Id.* ¶ 30. (Emphasis in original.)

¶ 12     With respect to plaintiff's theory of constructive trust, we found that, because a question of fact existed regarding whether plaintiff could sustain its breach of contract claim against Butler, Dombrowski's liability under a theory of constructive trust was unclear. *Id.* ¶ 41. We concluded that if plaintiff's nonperformance extinguished Butler's debt then plaintiff would not have any putative lien rights. *Id.* We therefore reversed the trial court's summary judgment order in favor of plaintiff and remanded the case for further proceedings. *Id.* ¶ 47.

¶ 13                    Proceedings in the Trial Court after First Appeal

¶ 14     Upon remand, defendants filed a motion for summary judgment, arguing that there was no genuine issue of material fact because plaintiff failed to perform under the contract and therefore could not recover. Defendants argued that it was clear from Dr. Michael's deposition testimony that he never submitted his claim for medical services to Butler's insurance company. Defendants attached as an exhibit to their motion Butler's Aetna insurance card and a document showing her plan was effective as of January 2009.

¶ 15      In response, plaintiff argued that, based on Dr. Michael's deposition testimony, plaintiff established that Butler did not identify any insurance carrier to plaintiff. Plaintiff attached an affidavit from Dr. Michael averring that plaintiff "submitted a Health Insurance Claim Form (HICFA) to the insurance carrier identified by Carolyn Butler ('Butler'), Delphi [*sic*] Casualty Company." [1] Attached to Dr. Michael's affidavit was a copy of the claim form that plaintiff argued he submitted to Delthi. Dr. Michael's affidavit also averred that "I have further reviewed [p]laintiff's charts and demographic data and there is no record of any other insurance carrier information provided by Ms. Butler to me or any other person working for [p]laintiff." The trial court granted defendants' motion for summary judgment.

¶ 16                                Second Appeal

*Illinois Neurospine Institute, P.C. v. Butler*, 2017 IL App (1st) 170047-U

¶ 17      On appeal, we reversed the trial court's order granting summary judgment in favor of defendants. *Neurospine Institute, P.C.*, 2017 IL App (1st) 170047-U, ¶ 33. As previously discussed, in our 2015 order, we found that, in order for plaintiff to satisfactorily perform under the contract, "plaintiff was required to bill Butler's insurance carrier prior to her becoming responsible for any remaining balance." *Illinois Neurospine Institute, P.C.*, 2015 IL App (1st) 143304-U, ¶ 34. In our 2017 order on the second appeal, we found that there was an issue of fact regarding whether plaintiff performed under the contract. *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 170047-U ¶ 31.

¶ 18      We concluded that the record did not contain any evidence that plaintiff was informed or aware that Butler was covered by Aetna insurance and it was unclear whether Butler was ever

---

[1] The record spells the insurance company as "Delphi" and "Delthi." At the hearing on September 9, 2019, the trial court clarified that the correct name is "Delthi Insurance Company." We will therefore refer to the company as "Delthi" throughout this order.

asked to, or ever did, provide her Aetna insurance information to plaintiff. *Illinois Neurospine Institute, P.C.*, 2017 IL App (1st) 170047-U ¶¶ 25-29. We stated that, according to Dr. Michael's affidavit attached to plaintiff's response to defendants' motion for summary judgment, plaintiff submitted a health insurance claim form to "the insurance carrier identified by Carolyn Butler [], Delphi [*sic*] Casualty Company." *Id.* ¶ 25. We stated that, even though Dr. Michael's affidavit referenced Delthi as the insurance carrier identified by Butler, defendants contended this was false and argued that Butler had Aetna as her provider during the relevant time. *Id.* ¶ 26.

¶ 19       In addition, we explained that the record did not contain any testimony or evidence regarding how plaintiff came to associate Delthi with Butler. *Id.* ¶ 25. We specifically posed the following questions, noting that they were crucial to the issue of plaintiff's performance but remained unanswered: Did plaintiff ever request Butler's insurance information? Did Butler ever provide any insurance information to plaintiff? Did Butler identify Delthi as being her insurer? Did Butler identify Aetna as being her insurer? *Id.* We concluded that the means through which plaintiff would have obtained information regarding Butler's insurance was unclear, noting that Butler had not been deposed, Butler did not give testimony via an affidavit, and the record did not contain any pertinent forms filled out by Butler during the course of her treatment. *Id.* ¶ 26. We also stated that, even though defendants presented evidence that Butler had Aetna insurance, that did not resolve whether plaintiff performed under the contract. *Id.*

¶ 20       With respect to plaintiff's theory of a constructive trust, we concluded that, until the issue of whether plaintiff failed to perform under the contract was resolved, defendants' liability for constructive trust was unclear. *Id.* ¶ 30. We reiterated our conclusion from our 2015 order stating that if it is " 'determined that plaintiff's nonperformance extinguished Butler's debt, then plaintiff would no longer have any putative lien rights.' " *Id.* ¶ 30 (quoting *Illinois Neurospine*

7

*Institute, P.C.*, 2015 IL App (1st) 143304-U, ¶ 41). We reversed the trial court's decision granting summary judgment in favor of defendants on both counts and remanded for further proceedings. *Id.* ¶ 33.

¶ 21                     Trial Proceedings after Second Appeal

¶ 22      Upon remand, the case proceeded to trial on plaintiff's claims for breach of contract and constructive trust.

¶ 23      Dr. Michael, a neurosurgeon, testified that he owned plaintiff, Illinois Neurospine Institute. He was the only provider of clinical care for plaintiff, and he employed secretaries who performed administrative duties and paperwork. Dr. Michael was not a participant in any health insurance group or plan, and he did not contract with any other group healthcare or discounted healthcare organization. In 2010, Dr. Michael saw almost exclusively patients involved in worker's compensation or personal injury cases.

¶ 24      Dr. Michael testified that when a patient would first come into his office, his staff would ask the patient to complete a "face sheet," which included the patient's address, phone number, and insurance information. He testified that the information was not necessarily completed on the first visit, as some information may not be there the first time, and "that's when the phone calls are made to the attorneys and anyone else involved to try to get information." Dr. Michael testified that his secretaries "know that we have to know the insurance information, so they ask and I sometimes ask the attorneys."

¶ 25      For a personal injury case, Dr. Michael testified that "we'll ask the attorney who the third-party liability is" and he would "reach out to the attorneys because they only and only they would usually have that information." Asked whether he would ask a patient in a personal injury case whether the patient had a medical insurance carrier that could potentially be liable, Dr.

8

Michael responded that "a medical insurance carrier wouldn't be liable" and that he felt "it would be unethical to bill someone who's not liable." If a patient would give him medical insurance information, that would be recorded in the chart. Dr. Michael would also tell patients before treatment that he was not going to bill their commercial insurance. He testified that "[i]f the patient were insistent," he would inform the patient that he was considered "out of network" because he did not contract with any insurance companies and that the patient would be liable for the remainder. If Dr. Michael did not bill an insurance company, he would expect the patient to pay him. He would also secure payment on personal injury cases through liens, which he would send to his patients and their attorneys.

¶ 26        Dr. Michael provided Butler with certain nonsurgical treatment and performed an anterior cervical discectomy on her. Dr. Michael never billed any medical insurance provider for the services he provided to Butler. Butler never presented him with Aetna plan information, a directive to bill Aetna, a medical insurance card, or other information directing him to bill a medical insurance company. He knew that Butler did not provide him with medical insurance information because there was no evidence of medical insurance information in Butler's chart and "it's nowhere in the entry that the staff would take when a patient was first referred to the office." Dr. Michael did not have a conversation with Butler about the financial impact of him billing "out of network" because Butler did not provide him with health insurance and he simply asked her "how she got hurt and she would tell me she was in the accident and the rest is the history."

¶ 27        Dr. Michael testified that Dombrowski, Butler's attorney, never provided him with Aetna information or directed him to bill Aetna. Dr. Michael billed a third-party liability company, Delthi, for the services he performed on Butler, and Dombrowski informed him that

Delthi was the company he should bill. Dr. Michael knew Dombrowski gave him this information because "[i]t's the only way we could have received it or the patient, which again as I said patients generally don't know who hit them or who's covering them." Dr. Michael testified that his health insurance claim forms showed that he billed Delthi for the services he rendered for Butler. These forms did not contain an address for Delthi, as the address is within the software system. Dr. Michael created a lien for his charges in this case, which he sent to Butler and Dombrowski. He never sent the lien to Delthi.

¶ 28     On cross-examination, Dr. Michael testified that he did not have a conversation with Dombrowski. Asked whether "you never spoke to [Dombrowski] about [Butler], did you?" Michael responded, "Not personally. My staff does and the billing company does." Asked whether he knew whether or not his staff had asked Butler for her medical insurance information, he testified that "She never offered it. She offered the fact that it was a personal injury case and her attorney told us it was Delthi."

¶ 29     Butler testified that, in 2009-10, she had Aetna medical insurance through her employer, Rush University. When she first came to Dr. Michael's office, the receptionist asked for her insurance card and she gave the receptionist her Aetna insurance card. After she met with the receptionist, her card was returned to her. Butler then met with Dr. Michael. Dr. Michael asked her whether she was involved in a car accident and did not ask her whether she had medical insurance. It was Butler's understanding that Dr. Michael was going to submit bills to her medical insurance company.

¶ 30     Butler did not know what Delthi was and never mentioned Delthi to Dr. Michael. Dr. Michael never told Butler that he was going to bill a third-party insurance carrier or that, if the third-party liability insurance company's policy limits were not high enough, then she would

have to pay. Dr. Michael did not tell Butler that he was not going to bill her medical insurance company. Butler did not receive any bills from Dr. Michael and had never seen the notice of physician's lien that Dr. Michael sent to Dombrowski in November 2009. Butler identified a form she completed in June 2010 with Orthopedics Associates of Naperville, in which she identified Aetna as her "primary insurance."

¶ 31    On cross-examination, Butler testified that she did not have any documents showing that she gave plaintiff any insurance information for Aetna. Orthopedic Associates of Naperville was the only treater who provided services to her relating to the car accident who billed Aetna. Butler settled her personal injury case for $325,000 and certain physicians were paid from that settlement. Butler did not pay plaintiff any money for the services that Dr. Michael rendered for her in 2009 and 2010.

¶ 32    Counsel asked Butler if she recalled being treated by Dr. Hassan and if she remembered how many physicians she saw related to her accident. Butler responded that she did not know who Dr. Hassan was and that she could only remember her primary care physician, Dr. Theresa Dabek. Asked whether she knew "the Rawling's Company" or "Pro Clinics," Butler responded that she did not know who they were. Butler did not recall the specific treatment rendered by, or whether she was treated at, Dr. Ossama Abdellatif, "Midwest Open MRI," "Rogers Park One-Day Surgery facility," "Paulina Anesthesia Company," or "Lakeshore Surgery Center Physicians." Butler remembered being treated at "The Delaware Place MRI." On re-direct, Butler testified that during the course of her treatment for her injuries related to the accident, she received MRIs and injections before she saw Dr. Michael. When Dr. Michael performed surgery on Butler, she was given anesthesia and she did not recall who did that or if she was billed for it.

¶ 33      Joseph Dombrowski testified that he represented Butler in her personal injury case. Dombrowski received a physician's lien from plaintiff in November 2009 as well as a bill for $800 for an independent medical examination (IME). In response to the lien, he sent Dr. Michael a letter asking for any billing and medical records that Dr. Michael may have generated. He also asked Dr. Michael why the lien stated it was for an IME, explaining that he did not know that lien rights could be created by an IME. Dombrowski did not receive a response from Dr. Michael and did not have any further communication with Dr. Michael or anyone from Dr. Michael's staff. Dombrowski never received any other bills from Dr. Michael's office before he settled the case.

¶ 34      In November 2010, Dombrowski filed a motion to adjudicate the liens for Butler's case. Dombrowski testified that the first lien holder listed in the motion was "The Rawlings Company," which was "a collection agency hired by the Aetna Insurance Company to recoup any money spent under their hospitalization subrogation policy." Dombrowski testified that plaintiff was not listed as a lien holder in the motion because plaintiff never sent him a bill and he had "no information as to their existence in this case." Dombrowski did not give Dr. Michael insurance information about Delthi, the third-party insurance carrier, and he never received any correspondence from Dr. Michael asking for this information.

¶ 35      On cross-examination, Dombrowski testified that he did not include plaintiff as a lien holder in his motion to adjudicate the liens because he did not believe that, under the Illinois Health Care Services Lien Act (Act), plaintiff had a valid lien for an IME. Asked what gave Dombrowski the authority to make that determination under the Act, he responded "[t]hrough practice and training," that he never heard of an IME creating a lien, and that he could make that

12

conclusion as an attorney. After the motion to adjudicate liens was completed, Dombrowski destroyed all his files other than the financial records.

¶ 36       Danelle Kelly, a registered nurse, testified for defendants that she reviewed Dr. Michael's records and bills, that she prepared a report on the reasonableness of his bills, and that her opinions were based on a reasonable degree of medical coding certainty. Kelly testified that Dr. Michael's charges were not reasonable. In rebuttal, plaintiff called Dr. Michael to testify about the reasonableness of his medical charges. Dr. Michael testified that Kelly's basis for her conclusion was inaccurate and that he had been billing the same way for 25 years and never had issues with being paid.

¶ 37       Following trial, the parties submitted written closing arguments. In plaintiff's closing argument, it argued that the evidence showed that plaintiff substantially performed under the contract. Plaintiff argued that the evidence showed that plaintiff requested Butler's insurance information and that Butler did not provide any insurance information to plaintiff. Plaintiff argued that Butler did not have any documentary evidence showing that she presented Aetna health insurance to plaintiff and that the court should give little weight to Butler's testimony that she provided her Aetna card to plaintiff.

¶ 38       In defendants' closing argument, they argued that plaintiff did not perform under the contract. Defendants argued that the evidence showed that Butler provided her Aetna insurance card to plaintiff during her first visit to Dr. Michael's office and that plaintiff failed to submit the courtesy claim to Aetna. They asserted that Butler testified that, during her first visit to Dr. Michael's office, a receptionist asked for her medical insurance card and Butler gave the receptionist her Aetna insurance card, after which the receptionist made a copy and returned the

card back to Butler. Defendants argued that the evidence showed that Dr. Michael never spoke to Dombrowski.

¶ 39    In September 2019, the trial court issued an order finding against plaintiff and in favor of defendants on both counts. The court specifically found that plaintiff failed to perform under the contract. In the court's oral ruling, it stated that it found that Butler "did disclose to [p]laintiff's staff the identity of her medical insurer, Aetna." The court stated that Butler "had a detailed recollection of giving her insurance card to the staff and the fact she has no paperwork proving it, isn't a surprise. She would not have any such paperwork in the normal course of things." The court stated as follows with respect to the credibility of the witnesses:

"This court finds [Butler] to be a reliable and trustworthy witness, which isn't to say it didn't also find Dr. Michael to be reliable and trustworthy, but he had no firsthand knowledge of the information she provided to his staff during that visit, and instead relied upon the fact that the copies of the insurance card were not contained in *** Butler's file *** as he would have expected them to be.

After considering all the evidence, I concluded that *** this evidence is outweighed by [Butler's] testimony, and that it is more likely than not that she did, in fact, provide her insurance card for her medical insurance to the staff of [plaintiff.]"

¶ 40    The court further stated that the evidence also established that Dr. Michael obtained the information about Delthi, the third-party insurance carrier, from Dombrowski, not Butler. The court concluded that it found that, "since [p]laintiff did not submit the courtesy claims for payment to Aetna, even if it did submit claims to Delthi, that it did not comply with its own obligations" under the contract and therefore could not recover for Butler's alleged breach of contract. The court also noted that, even if plaintiff's submission of a claim to Delthi, the third-

14

party insurer, would have been sufficient to satisfy plaintiff's obligations under the contract, the court did not believe that Dr. Michael established that it was more reasonably true than not that he had billed Delthi. The court, however, explained that this finding was "not critical to my finding anyway" because "I'm finding under the contract, he had to bill the medical insurance company."

¶ 41       With respect to plaintiff's theory of constructive trust, the court found against plaintiff. In doing so, it referenced this court's 2017 order, in which we stated that, if it is ultimately determined that plaintiff's nonperformance extinguished Butler's debt then plaintiff would not have any punitive lien rights. The trial court entered judgment against plaintiff on both counts. This appeal followed.

¶ 42                                    II. ANALYSIS

¶ 43       On appeal, plaintiff argues that the trial court's finding that plaintiff did not perform its obligations under the contract was against the manifest weight of the evidence. Plaintiff contends that it substantially performed under the contract by billing the insurance company identified by defendants. Plaintiff asserts that the evidence showed that plaintiff requested Butler's insurance information, Butler did not provide plaintiff with any insurance information, Dombrowski identified Delthi as being Butler's insurer, and Butler did not identify Aetna as being her insurer. Plaintiff claims that the evidence was clear that the parties identified Delthi as the appropriate party to bill for Dr. Michael's services. Plaintiff argues that Butler's testimony should be afforded no weight because she did not have a recollection of any of the facts related to this case.

¶ 44       When, as here, a party challenges the sufficiency of the evidence following a bench trial, we review whether the trial court's judgment is against the manifest weight of the evidence.

*Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 19. A judgment is considered against the manifest weight of the evidence "only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). We will uphold a trial court's judgment following a bench trial " 'if there is any evidence supporting it.' " *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 890 (2010) (quoting *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002))..

¶ 45        In a bench trial, the trial court "makes findings of fact and weighs all of the evidence in reaching a conclusion." *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35. As the trier of fact, the trial court has "a superior vantage point from which to observe and judge witnesses' demeanor and credibility, while a reviewing court has only a cold record in which to govern its decision-making process." *Flynn v. Maschmeyer,* 2020 IL App (1st) 190784, ¶ 70. Thus, we give great deference to a trial court's credibility determinations and will not substitute our judgment for that of the trial court. *Staes & Scallan, P.C.*, 2012 IL App (1st) 112974, ¶ 35. We defer to the trial court's factual findings unless they are against the manifest weight of the evidence. *Flynn*, 2020 IL App (1st) 190784, ¶ 70.

¶ 46        To recover under a breach of contract claim, a plaintiff must prove that there is a valid and enforceable contract, plaintiff performed under the contract, defendant breached the contract, and plaintiff suffered damages or injury as a result of defendant's breach. *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 13.

¶ 47        As previously discussed in our 2015 order, under the parties' contract, "plaintiff had the duty to first bill Butler's insurance carrier before any amount became due." *Illinois Neurospine Institute, P.C. v. Butler,* 2015 IL App (1st) 143304-U*,* ¶¶ 33-34. Following trial, the trial court found that plaintiff failed to perform its obligations under the contract. In doing so, the

16

court made the factual findings that Butler disclosed to plaintiff that she had Aetna medical insurance and that plaintiff did not submit the courtesy claims for payment to Aetna. We cannot conclude that these findings were against the manifest weight of the evidence.

¶ 48    The evidence at trial showed that Butler testified that she had Aetna medial insurance during the relevant period and that, during her first visit at Dr. Michael's office, the receptionist asked her for her insurance card. Butler testified that she gave the receptionist her Aetna insurance card and the receptionist returned it to her. Butler testified that she did not know what Delthi was and did not mention Delthi to Dr. Michael. Dr. Michael testified that he did not bill any medical insurance provider for the medical services he provided to Butler. Accordingly, based on this evidence, we cannot find that the trial court's findings that Butler informed plaintiff of her Aetna medical insurance information and that plaintiff did not submit courtesy claims to Aetna were arbitrary, unreasonable, or not based on the evidence. Thus, the trial court's finding that plaintiff failed to perform under the contract was not against the manifest weight of the evidence.

¶ 49    Nevertheless, plaintiff argues that the trial court should have given no weight to Butler's testimony that she gave her insurance information to plaintiff. However, the trial court expressly found that Butler was a reliable and trustworthy witness and that she "had a detailed recollection of giving her insurance card to the staff." As the trier of fact, the trial court here was in "a superior vantage point from which to observe and judge witnesses' demeanor and credibility." *Flynn,* 2020 IL App (1st) 190784, ¶ 70. From our review of the record, we cannot find that the court's credibility determination is against the manifest weight of the evidence. We therefore must defer to that finding.

¶ 50    Plaintiff argues that there was no evidence showing that Butler presented any insurance information, including her Aetna insurance card, to plaintiff. Plaintiff asserts that Dr. Michael testified that if a patient presented with medical insurance, that information would have been recorded in the chart and there was no insurance information in Butler's chart. However, "[w]hen contradictory testimony that could support conflicting conclusions is given during a bench trial, we will not disturb the trial court's factual findings based upon that testimony unless a contrary finding is clearly apparent." *Kroot*, 2017 IL App (1st) 162315, ¶ 19. Here, the court stated that Dr. Michael "had no firsthand knowledge of the information [Butler] provided to his staff" and "instead relied upon the fact that the copies of the insurance card were not contained" in her chart "as he would have expected them to be." The court then concluded that, after considering the evidence, it found "that this evidence is outweighed by [Butler's] testimony, and that it is more likely than not" that she provided her insurance card to plaintiff's staff. Based upon the evidence described above and the trial court's creditability determinations, the trial court's factual finding that Butler gave plaintiff her Aetna medical insurance information was not unreasonable or arbitrary, and a contrary finding is not clearly apparent.

¶ 51    Plaintiff further asserts that Butler identified Delthi as being her insurer. However, the court concluded that the evidence established that Dr. Michael obtained the information about Delthi, the third-party insurance carrier, from Dombrowski, not Butler. Moreover, given the trial court's findings that Butler informed plaintiff that her insurance was Aetna and that plaintiff failed to submit claims to Aetna, we agree with the trial court's conclusion that, even if plaintiff did submit claims to Delthi, plaintiff did not perform its obligations under the contract because it did not submit courtesy claims to Butler's insurance carrier, which was Aetna.

¶ 52    Accordingly, the trial court's finding that plaintiff did not perform its obligations under the contract is not against the manifest weight of the evidence. We therefore affirm the court's judgment.

¶ 53                                  III. CONCLUSION

¶ 54    For the reasons explained above, we affirm the circuit court's judgment.

¶ 55    Affirmed.